EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rolando Barreto Nieves y otros<br><br>Recurridos<br><br>v.<br><br>East Coast Water Sports, LLC y su aseguradora Universal Insurance Co.<br><br>Peticionarios | Certiorari<br><br>2024 TSPR 40<br><br>213 DPR ___ |

Número del Caso: CC-2023-0128

Fecha: 22 de abril de 2024

Tribunal de Apelaciones:

    Panel VI

Abogada de la parte peticionaria:

    Lcda. Gleniz Torres Martínez

Abogado de la parte recurrida:

    Lcdo. Jorge M. Izquierdo San Miguel

Materia: Derecho de Seguros – Interpretación de los términos "*accompanied by*" y "*parent or guardian*" en el contexto de una cláusula de exclusión de una póliza de seguros expedida a favor de una compañía dedicada a recorridos guiados de motoras acuáticas.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rolando Barreto Nieves y otros

      Recurridos

          v.

East Coast Water Sports, LLC y su aseguradora Universal Insurance Co.

      Peticionarios

CC-2023-0128

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 22 de abril de 2024.

Hoy nos corresponde interpretar los términos "*accompanied by*" y "*parent or guardian*" en el contexto de una póliza de seguros expedida a favor de una compañía dedicada a recorridos guiados de motoras acuáticas (*jet ski guided tours*). Esto, a los fines de determinar si, ante los hechos acontecidos, procede aplicar una cláusula de exclusión que impediría proveer la cobertura pactada.

Luego de un estudio concienzudo y particularizado del expediente, así como del derecho, las normas de hermenéutica aplicables y su jurisprudencia interpretativa, resolvemos que procede aplicar la cláusula de exclusión contenida en la póliza.

A continuación, reseñamos la situación fáctica que dio paso al presente recurso.

**I**

El 16 de junio de 2018 la menor M.B.Z., de doce años de edad, se encontraba en un cumpleaños en el Balneario La Monserrate en Luquillo, Puerto Rico. La menor M.B.Z. estaba acompañada de su hermana E.B.Z., de entonces dieciséis años de edad, y de varios compañeros y varias compañeras de su grupo escolar. Las menores no estaban acompañadas de alguno de sus padres, parientes, tutor o tutora, o persona adulta encargada.

En la celebración del cumpleaños, un grupo de menores de entre catorce y diecisiete años de edad alquilaron varias motoras acuáticas (*jet skis*) a East Coast Watersports, LLC (en adelante, "East Coast"). En una de estas motoras acuáticas iba la menor M.B.Z. como pasajera, mientras que otro menor de edad la conducía. En el viaje, la menor M.B.Z. cayó al agua y fue impactada en el acto por otro *jet ski* que iba siguiendo a aquel en donde ella iba montada. A raíz de este suceso, la menor M.B.Z. perdió la vida.

Por estos hechos, el 5 de septiembre de 2018, los padres de la menor M.B.Z., el Sr. Rolando Barreto Nieves y la Sra. Yanisse Zayas Gómez, y su hermana, E.B.Z. (en conjunto, "demandantes"), presentaron una *Demanda* de daños y perjuicios en contra de East Coast. Alegaron que esta última fue negligente al no instruir adecuadamente a los arrendatarios de los *jet skis*. El 11 de octubre de 2018 enmendaron la

demanda para incluir a Universal Insurance Co. (en adelante, "Universal") como parte demandada. Sostuvieron que Universal había expedido una póliza de seguros a favor de East Coast, la cual estaba vigente al momento de los hechos y cubría los daños reclamados.

El 16 de noviembre de 2018 Universal compareció por primera vez y presentó una moción de sentencia sumaria parcial. En primer lugar, aceptó que el 12 de marzo de 2018 se suscribió una Póliza de Responsabilidad Pública Comercial Número 545-000568235 (Póliza) con vigencia de un año. Expuso que la Póliza se limitaba a recorridos guiados en motoras acuáticas (*jet ski guided tours*). En segundo lugar, expresó que la Póliza contenía varios endosos con condiciones restrictivas que limitaban la cubierta ofrecida. En particular, citó el Endoso E:

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY**

**CONDITION FOR MINORS**

IT IS HEREBY UNDERSTOOD AND AGREED THAT CHILDREN BETWEEN THE AGES OF 6 AND 18 YEARS OF AGE MUST BE ACCOMPANIED BY A PARENT OR GUARDIAN, IN ORDER TO COMPLY WITH THE POLICY.[1]

En virtud de esta cláusula, Universal concluyó que la Póliza otorgada a East Coast estaba condicionada a que la participación de cualquier persona menor de edad (entre seis a dieciocho años), fuese con la compañía de su padre, su madre, su tutor o tutora, o persona encargada. Dicho de otra forma, Universal sostuvo que una persona menor de edad no podía estar *sola* en la motora acuática. Añadió que esta

---

[1] Apéndice del *certiorari*, pág. 190.

condición fue notificada a East Coast por su productor de seguros, el Sr. Jorge Bermúdez, en el proceso de cotización y negociación de la Póliza. Así, indicó que tal condición no generó controversia, ni se solicitó su eliminación o modificación.

En vista de lo argumentado, afirmó que, al no haber controversia de que la menor M.B.Z figuraba entre las edades antes descritas y estaba acompañada por otro menor de edad ──no por su padre, su madre, su tutor o tutora o persona adulta encargada── procedía que se dictase sentencia sumaria parcial a su favor. Esto, pues no existía cubierta ante los hechos alegados en la *Demanda* bajo la Póliza expedida a favor de East Coast.

En respuesta, el 7 de diciembre de 2018, los demandantes enmendaron su demanda por segunda ocasión. Alegaron, por primera vez, que los menores iban acompañados y estaban bajo la supervisión de dos empleados guía de East Coast.

Asimismo, los demandantes presentaron su oposición a la solicitud de sentencia sumaria parcial de Universal. Arguyeron que no se cumplía con la exclusión contenida en el Endoso E, puesto que la menor estaba acompañada por dos empleados guía al momento del accidente. Intimaron que el lenguaje de la póliza no requería específicamente que la persona encargada estuviese montada con el menor en la misma motora acuática. Insistieron en que, para darle a la palabra *"accompanied"* el significado que planteó Universal, esta última debió haberla definido en la Póliza. De otra parte,

sostuvieron que las personas encargadas eran los dos empleados guía que acompañaban a los menores en el recorrido. Por todo lo anterior, solicitaron que se declarara no ha lugar la moción de sentencia sumaria parcial que presentó Universal.

Universal replicó y, en síntesis, manifestó que, de sostenerse la definición que proveyeron los demandantes, resultaría inverosímil y contrario al sentido común de la palabra "*accompanied*" en el contexto de los hechos. Es decir, el uso de un medio de transporte como lo es una motora acuática. Aseveró, además, que no procedía ampliar los términos "*parent or guardian*" para que incluyeran a los empleados del asegurado.

Tras anotársele la rebeldía a East Coast, el 27 de junio de 2019 se celebró una *Vista Argumentativa* para considerar la moción de sentencia sumaria que presentó Universal. El 20 de marzo de 2020 el Tribunal de Primera Instancia dictó una *Sentencia Parcial* y esbozó trece determinaciones de hechos que encontró incontrovertidos. El foro primario concluyó que los términos del Endoso E eran claros y específicos en cuanto a la conducta no cubierta. En particular, expresó que:

> Este tribunal no está convencido y no puede avalar la contención de la parte demandante y su interpretación en torno a las palabras "accompanied" y, mucho menos, al de "parent or guardian". Hacerlo lleva —inevitablemente— a resultados ilógicos y absurdos. Es deber de este tribunal contextualizar estos términos con el propósito de la póliza y la interpretación de la cláusula restrictiva en controversia. De igual forma, es deber [del tribunal] buscar el sentido y [el] significado a las cláusulas en controversia que le[s] daría una persona de normal inteligencia que fuese a comprar la póliza aquí en controversia. (Citas omitidas).[2]

---

[2] Apéndice del *certiorari*, pág. 47.

Al contextualizar la controversia a los hechos aquí acontecidos, el Tribunal de Primera Instancia sostuvo que:

> Es incorrecto concluir —de manera automática— que la cláusula de exclusión en controversia es una obscura o ambigua debido a que no define expresamente la acción de acompañar a un o una menor entre las edades 6 a 18 años. Al interpretar la cláusula restrictiva E-01-10 y en específico la palabra "*accompanied*" […] en su corriente y usual significado como una persona de normal inteligencia el tribunal no puede obviar que existe un rango de edades en ella contenida. Esto unido al tipo de actividad o servicio que ofrece el asegurado y el riesgo que supone [esta] nos impide aceptar que hay que interpretar que un menor de seis (6) años puede montarse y conducir una motora acuática solo sin estar acompañado de sus padres o guardi[á]n ["*parents or guardian*"] y vigilado por un empleado de la compañía que alquila el equipo. Esta interpretación resulta ser absurda, físicamente imposible […] y que va en contra de nuestro ordenamiento jurídico en materia de leyes de navegación.[3]

De otro lado, al examinar los términos "*parent or guardian*", el Tribunal de Primera Instancia destacó que el propósito de la Póliza era proteger una actividad en específico: recorridos guiados en motoras acuáticas (*jet ski guided tours*). En otras palabras, ineludiblemente, East Coast estaba llamado a proveer un empleado guía que asistiera a las personas arrendatarias del equipo acuático. La sala sentenciadora expresó:

> Es precisamente, dentro de la delimitación de la actividad protegida, que debe quedar establecido: (1) que un "tour guide" es un empleado de la compañía; (2) que está presente para guiarlos durante su recorrido en la motora acuática; (3) que vigila de manera general la seguridad de los participantes; y (4) que —indiscutiblemente— le responde a su patrono como empleado.[4]

Ante el análisis esbozado y el derecho aplicado, el foro primario declaró con lugar la moción de sentencia sumaria parcial y desestimó la causa de acción en contra de Universal.

---

[3] Íd.
[4] Íd., pág. 49.

Los demandantes solicitaron la reconsideración del referido dictamen, pero esta fue denegada.

Inconformes, los demandantes presentaron una *Apelación* ante el Tribunal de Apelaciones. Como único error, señalaron que el foro primario erró al concluir que la póliza no cubría los hechos alegados en la demanda, pues la interpretación que propusieron de la cláusula de exclusión sí era plausible y no absurda.

Al contar con la comparecencia de ambas partes, el foro apelativo intermedio revocó el dictamen apelado. En su análisis, encontró que los demandantes demostraron que los términos del Endoso E no eran claros, pues estaban sujetos a varias interpretaciones según quien los examinaba. El Tribunal de Apelaciones tomó en consideración que la Póliza era un contrato de adhesión y no proveía las definiciones de los términos "*accompanied*" y "*guardian*". En ese sentido, esbozó que la cláusula restrictiva no especificaba si debía haber un adulto o un guardián en la misma motora acuática que el menor. Asimismo, mencionó que tampoco se excluyó expresamente la situación que ocurrió en este caso en la cual los guías acompañaron a los menores durante el recorrido.

En vista de lo anterior, el foro apelativo intermedio sostuvo que existía una controversia de hechos sobre el significado del Endoso E que debía dirimirse en un juicio en sus méritos, para atender e interpretar la intención de Universal al momento de pactar la Póliza. Lo anterior, no sin antes advertir que la *Declaración Jurada* emitida por el

Sr. Christian Camejo García (en adelante, "señor Camejo García") —Director de Banca y Reaseguro de Universal— "no subsana la ambigüedad de la cláusula, toda vez que la opinión o creencia de este funcionario no puede tener el efecto de enmendar un contrato de adhesión como el que nos ocupa, menos aun cuando se trata de un asunto sujeto a interpretaciones diversas".[5]

Luego del mandato correspondiente,[6] el 18 de junio de 2021 Universal presentó su *Contestación a segunda demanda enmendada*. En síntesis, sostuvo que los daños reclamados de las alegaciones presentadas no estaban cubiertos por la Póliza expedida a favor de East Coast.

Así las cosas, y después de varios trámites procesales, se celebró el juicio en su fondo el 29 de julio de 2022. Universal desfiló como prueba lo siguiente: (1) la Póliza; (2) una Declaración Jurada del señor Camejo García; (3) una cadena de correos electrónicos entre el señor Camejo García y el señor Bermúdez; (4) el testimonio en corte del señor Camejo García, y (5) el testimonio en corte del Sr. José Ortiz Rodríguez, Vicepresidente de Reclamaciones de Universal.

Finalmente, el 27 de septiembre de 2022, el Tribunal de Primera Instancia emitió una Resolución en la que resolvió que la Póliza era ambigua y, por esta razón, procedía interpretarse a favor de la cubierta de los daños reclamados.

---

[5] Íd., pág. 71.
[6] Inconforme con el dictamen del foro apelativo intermedio, el 23 de febrero de 2021, Universal presentó un recurso de *Certiorari* ante esta Curia. Sin embargo, este fue denegado por incumplir con el Reglamento de este Tribunal.

Tras reconocer que el mandato del Tribunal de Apelaciones se dirigió a dilucidar la intención de Universal al momento de pactar la Póliza, el foro primario sostuvo que la aseguradora no presentó evidencia que permitiera conciliar las discrepancias entre el testimonio del señor Camejo García y el lenguaje de la Póliza. En ese particular, mencionó que, por una parte, el señor Camejo García testificó que la intención al pactar la Póliza era que los grupos debían ser guiados por dos personas. Sin embargo, el foro de instancia detalló que de la Póliza no surgía el requisito de pluralidad.

De otra parte, destacó que el señor Camejo García testificó que la intención iba dirigida a que el grupo protegido en el Endoso E fuese de menores entre cinco y veintiún años de edad, mientras que la Póliza condicionaba la participación a menores entre seis y dieciocho años. En virtud de lo anterior, concluyó que "[e]videntemente, ocurrió algo entre la participación de Camejo y el perfeccionamiento del contrato sobre lo cual no se ofreció evidencia".[7]

En desacuerdo, el 27 de octubre de 2022, Universal presentó un recurso de *Certiorari* ante el Tribunal de Apelaciones.[8] En esencia, reclamó que la Póliza a favor de East Coast no cubría los hechos alegados en la demanda. Los demandantes se opusieron oportunamente. Con el beneficio de

---

[7] Íd., pág. 237.
[8] En esa misma fecha, Universal presentó una *Moción en auxilio de jurisdicción solicitando orden de paralización* ante el foro apelativo intermedio. Esta solicitud fue denegada mediante una *Resolución* emitida el 17 de noviembre de 2022.

la comparecencia de las partes, el foro *a quo* procedió a expedir el recurso y confirmar la *Resolución* recurrida.

El foro apelativo intermedio, mediante una *Sentencia* notificada el 19 de enero de 2023, sostuvo las determinaciones de hecho y de derecho realizadas por el foro primario. Tras evaluar la prueba desfilada en el juicio, concluyó que la intención que le quería conferir Universal a la cláusula restrictiva no surgía del texto de la Póliza. "Dicho de otro modo, la [P]óliza no exige ni especifica quién debe acompañar al menor y de qué manera, por lo que no es un asunto que pueda meramente interpretarse de forma acomodaticia".[9] Por tanto, al igual que el foro primario, el Tribunal de Apelaciones determinó que la Póliza cubría los daños alegados por los demandantes.

Insatisfecho aún, el 21 de febrero de 2023, Universal compareció ante esta Curia mediante el recurso de *Certiorari* que nos ocupa y señaló los errores siguientes:

> **PRIMER ERROR:** Erró el Tribunal de Apelaciones al confirmar [la] cubierta para un accidente en "*Jet Ski*", ocupado por dos menores, a la luz de una cláusula restrictiva, luego de establecerse que la intención de la aseguradora al momento de pactar la póliza e incluir la restricción, era que los menores estuvieran "acompañados" por su "padre o tutor", lo que no sucedió en este caso.

> **SEGUNDO ERROR:** Erró el Tribunal de Apelaciones al negarse a analizar el testimonio de Christian Camejo, el cual fue rechazado por el TPI, bajo el fundamento equivocado de que el foro apelativo había rechazado previamente su testimonio, cuando dicho foro lo que hizo fue una determinación de suficiencia de la prueba a la luz de una declaración jurada sometida con una solicitud de sentencia sumaria.

Tras expedir el recurso y al contar con las comparecencias de las partes, resolvemos.

---

[9] Íd., pág. 434.

**II**

**A. *El contrato de seguro***

Hemos reconocido en reiteradas ocasiones el alto interés público que permea a los contratos de seguros en nuestra jurisdicción. Con. Tit. Acquamarina *et al.* v. Triple-S, 210 DPR 344, 355 (2022); Consejo de Titulares v. MAPFRE, 208 DPR 761, 773 (2022); Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 896 (2012). Este tipo de contrato puede definirse como un acuerdo entre una parte denominada asegurador y otra parte llamada asegurado en donde el primero, a cambio de una contraprestación, se obliga a indemnizar al segundo o a proveerle un beneficio específico o determinable en caso de producirse un hecho incierto, pero previsto en el acuerdo. San Luis Center Apts *et al.* v. Triple-S, 208 DPR 824, 830-832 (2022).[10]

**i.   Interpretación de los contratos de seguros**

El Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, 26 LPRA sec. 101 *et seq.* (en adelante, "Código de Seguros"), es la legislación especial que rige la industria de seguros. Entre otras cosas, pauta la manera en la que habremos de interpretar las pólizas de seguros. Al regir nuestro ejercicio hermenéutico, "dispone que los contratos de seguro se interpretan globalmente, a base del conjunto total de sus términos y condiciones, según expuestos en la póliza y según se hayan ampliado, extendido o modificado

---

[10] Véase, además, Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, 26 LPRA sec.102.

por aditamento, endoso o solicitud adherida a la póliza y que forme parte de esta". R.J. Reynolds v. Vega Otero, 197 DPR 699, 707-708 (2017). Véanse, también, San Luis Center Apts v. Triple-S, *supra*, pág. 832; Echandi Otero v. Stewart Title, 174 DPR 355, 369 (2008); Código de Seguros, 26 LPRA sec. 1125. Por lo tanto, las normas de interpretación general de los contratos recogidas en el Código Civil de Puerto Rico aplicarán únicamente de forma supletoria. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 898; Echandi Otero v. Stewart Title, *supra*, pág. 369.

Asimismo, hemos pronunciado que el contrato de seguros es un contrato de adhesión. Íd., págs. 369-370. De este modo, sus disposiciones deben interpretarse liberalmente a favor de la parte asegurada. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, págs. 898-899; Jiménez López et al. v. SIMED, 180 DPR 1, 10-11 (2010); S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372, 386 (2009); Echandi Otero v. Stewart Title, *supra*, págs. 369-370.

> Esto obedece a que[,] como los términos de las pólizas de seguro no son el producto de la negociación entre las partes, sino que son prefijados por el asegurador sin que el asegurado tenga la facultad de variarlos, el asegurador "tiene la obligación de hacer clara su intención; en otras palabras[,] viene obligado a establecer en la póliza, de manera diáfana, los riesgos por los que viene obligado a responder". S.L.G. Francis-Acevedo v. SIMED, *supra*, pág. 386 (citando a Meléndez Piñero v. Levitt & Sons of P.R., 129 DPR 521, 547 (1991)).

Por otra parte, si los términos de la póliza son claros, específicos y ausentes de ambigüedad, su cumplimiento será obligatorio pues el contenido del contrato constituye la ley entre las partes. San Luis Center Apts v. Triple-S, *supra*,

pág. 832; Echandi Otero v. Stewart Title, *supra*, págs. 369-370. Los términos de una póliza se reputarán claros cuando su lenguaje sea específico, cuando no dé lugar a dudas o cuando no sea susceptible a distintas interpretaciones. San Luis Center Apts v. Triple-S, *supra*, pág. 833. A su vez, "los términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces". Echandi Otero v. Stewart Title, *supra*, pág. 370 (citas omitidas).

### ii.  Cláusulas de exclusión

Las cláusulas de exclusión tienen el propósito de limitar la cubierta de una póliza al disponer que el asegurador no responderá por ciertos eventos, riesgos o peligros allí contenidos. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 889; Echandi Otero v. Stewart Title, *supra*, pág. 370. "Por dicha razón, hemos resuelto que las exclusiones se han de *interpretar restrictivamente* a favor del asegurado, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada". Echandi Otero v. Stewart Title, *supra*, págs. 370-371. Véase, también, Molina v. Plaza Acuática, 166 DPR 260, 267 (2005); Marín v. Int'l Ins. Co. of P.R., 137 DPR 356, 362 (1994); Rivera Robles v. Ins. Co. of Puerto Rico, 103 DPR 91, 93 (1974); R. Cruz, *Derecho de Seguros*, San Juan, Pubs. JTS, 1999, pág. 167.

Se desfavorece el uso de estas cláusulas, puesto que el fundamento principal de un seguro es proveer protección al asegurado. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 899; S.L.G. Francis-Acevedo v. SIMED, *supra*, pág. 389. Por ello, se deben interpretar restrictivamente contra el asegurador. "No obstante, si las cláusulas de exclusión son claras y aplican a determinada situación, la aseguradora no será responsabilizada por aquellos riesgos expresamente excluidos". Maderas Tratadas v. Sun Alliance *et al.*, *supra*, págs. 899-900; Jiménez López *et al.* v. SIMED, *supra*, pág. 11; Echandi Otero v. Stewart Title, *supra*, pág. 371. Véase, además, Molina v. Plaza Acuática, *supra*, pág. 261.

Esbozado el derecho aplicable, procedemos a resolver la controversia ante nos.

**III**

Universal sostuvo que era un sinsentido que el Tribunal de Apelaciones, en su primera intervención en el caso, devolviese el pleito al foro de instancia para celebrar una vista evidenciaria a los fines de determinar la intención de la aseguradora al incluir la cláusula de exclusión en la Póliza *porque los términos no estaban definidos*, mientras que, en su segunda intervención, rechazó la prueba presentada para sostener tal intención, **bajo el mismo argumento de que los términos no estaban definidos**. Asimismo, Universal expuso que fue la única parte que presentó prueba sobre el significado de la cláusula restrictiva y su intención al momento de otorgar la Póliza. También indicó que la prueba

presentada no fue controvertida o impugnada por los demandantes.

Por otro lado, arguyó que, a raíz de la presentación de prueba en el foro de instancia, se establecieron varios asuntos, entre ellos, que: (1) las condiciones y los términos de la Póliza se incluyeron no solamente para limitar el riesgo a ser asegurado en cuanto a los menores entre las edades de seis y dieciocho años, sino que también se especificó la actividad asegurada; (2) originalmente, la actividad asegurada era la renta de motoras acuáticas y, posteriormente, se enmendó para cubrir únicamente *jet ski guided tours*; (3) los guías estaban llamados a dirigir a los grupos, mantenerlos en línea y dentro de la ruta protegida en la Póliza; (4) el predio o límite protegido por donde debían transcurrir los recorridos estaba establecido, y (5) todos los participantes debían utilizar casco y salvavidas.[11] Lo anterior, al amparo de un mismo propósito: "limitar el riesgo de manera que fuera adecuado a los parámetros de suscripción de la compañía de seguros y poder asegurarlo".[12]

Por otra parte, alegó que la interpretación propuesta para analizar los términos "*parent or guardian*" y "*accompanied*" no se daban en el vacío, sino bajo el marco fáctico del tipo de negocio que pretendía asegurarse. Por ello, arguyó que su contención se daba en "el uso ordinario de [e]stas palabras, a la luz de la intención en el momento

---

[11] Véase *Certiorari*, pág. 15.
[12] Íd.

de pactar la cubierta, [que] no es ajeno a su significado común y usual […]".[13]

Los demandantes, sin embargo, se opusieron a estos planteamientos. Arguyeron que, del mismo testimonio del señor Camejo García, así *como de su declaración jurada*, surgía que este había utilizado la palabra "encargado" como un sinónimo de la palabra "guardián". En ese sentido, era claro que los empleados guía "estaban encargados de los menores mientras duraba el recorrido, por lo que debe cubrir la póliza".[14]

También plantearon que de este mismo testimonio surgía que, pese a la importancia que se le imprimía al hecho de que el padre o la madre, guardián o persona encargada debía estar en la motora acuática con el menor, esto no resultaba expresamente en el texto de la Póliza. Por el contrario, plantearon que el término "*accompanied*" se prestaba a tres interpretaciones razonables, a saber:

> (i) el encargado que está acompañando al menor está montado en la misma motora acuática donde va el menor y también está conduciendo la motora; (ii) el encargado que está acompañando al menor está montado en la misma motora acuática donde va el menor[,] pero el menor va conduciendo la motora; (iii) **el encargado que está acompañando al menor lo está haciendo desde una motora acuática distinta.** (Negrillas suplidas).[15]

Por tanto, los demandantes argumentaron que, ante la presunta ambigüedad que surge de las distintas interpretaciones que se le pueden dar a la frase "acompañado por", y ante el estándar de los contratos de adhesión, procedía que se interpretara a su favor y se proveyera

---

[13] Íd., pág. 18.
[14] Oposición al *certiorari*, pág. 2.
[15] Íd., pág. 8.

cubierta a los hechos reclamados en la demanda. **No les asiste la razón.**

En primera instancia, resulta meritorio aclarar que el hecho de que los términos en controversia no estén definidos en la póliza de seguros no se traduce a que estos sean irremediablemente ambiguos. Según el ordenamiento vigente, y al tomar en cuenta la norma de hermenéutica que impone el Artículo 11.250 del Código de Seguros de Puerto Rico, *supra*, la interpretación de este tipo de contrato se debe realizar **globalmente**, *a base del conjunto total de sus términos y condiciones*. En ese sentido, los tribunales estamos llamados a hacer ese análisis integral de los términos y condiciones de las pólizas de seguros de forma tal que podamos adjudicar la claridad o ambigüedad de estos, y así determinar si procede o no la cubierta ofrecida.

Atendido este planteamiento, resaltamos que la Real Academia Española define el verbo "acompañar" como "estar o ir en compañía de otra u otras personas".[16] Ahora bien, como esta definición no dispone de la controversia que nos ocupa, es menester tomar en cuenta otras consideraciones para determinar si, en efecto, la expresión "estar acompañado por" ("*accompanied by*") es ambigua en el contexto de la Póliza específicamente aquí expedida para el negocio de recorridos guiados de motoras acuáticas (*jet ski guided tours*).

---

[16] Diccionario de la Lengua Española, 2023, https://dle.rae.es/acompa%C3%B1ar, (última visita, 22 de abril de 2024)

En un ejercicio de hermenéutica, nos parece persuasivo examinar varias legislaciones estatales que regulan ciertas actividades y disponen de algunas exclusiones cuando ocurre una situación determinada; específicamente cuando participa una persona menor de edad.  La *Ley de Navegación y Seguridad Acuática de Puerto Rico*, Ley Núm. 430-2000, 12 LPRA sec. 1401 *et seq.* (Ley Núm. 430-2000), provee ciertas limitaciones al ejercicio de algunas actividades marítimas. En particular, dispone lo siguiente:

> **Ninguna persona menor de doce (12) años de edad** operará una embarcación de motor de más de diez (10) caballos de fuerza **sin estar acompañada de un adulto**; [d]isponiéndose, que de tratarse de una persona menor de diez (10) años de edad el caballaje del motor no excederá de diez (10) caballos de fuerza y **ninguna persona menor de catorce (14) años de edad** operará una motora acuática **sin estar acompañado de un adulto.** (Negrillas suplidas). 12 LPRA sec. 1404(9)(b).

La referida legislación no ofrece una definición para la acción de "estar acompañado". Tampoco indica si la acción de acompañar ocurre en la misma embarcación o en una distinta. Sin embargo, como parte de sus propósitos se encuentran la prevención de accidentes y la protección de las y los ciudadanos como de los recursos naturales de la Isla. Exposición de Motivos de la Ley Núm. 22-2000 (2000 [Parte III] Leyes de Puerto Rico págs. 2958-2960). Por tanto, la única inferencia razonable y lógica es que la ley lo que busca es un control supletorio o supervisión directa de la persona adulta para auxiliar al menor en el manejo de una embarcación de motor.

Por otro lado, la *Ley de Vehículos y Tránsito de Puerto Rico*, Ley Núm. 22-2000, 9 LPRA sec. 5001 *et seq.* (Ley Núm.

22-2000), permite que toda persona mayor de dieciséis años, pero menor de dieciocho años, adquiera una licencia de aprendizaje para conducir un vehículo de motor mientras obtiene la capacitación mínima requerida para obtener la licencia de conducir correspondiente. 9 LPRA sec. 5001 (51)(a). "Esta licencia [de aprendizaje] estará condicionada a que el manejo del vehículo se efectúe **en compañía de un conductor autorizado** a manejar tal tipo de vehículo, *excepto en el caso de las motocicletas, que no se requerirá acompañante* […]". (Negrillas y énfasis suplido). 9 LPRA sec. 5001 (51)(a). Más adelante, la Ley Núm. 22-2000 especifica que la persona menor, dentro de las edades delimitadas, podría conducir "siempre que vaya acompañado por un conductor con un certificado de licencia de conducir que **tenga veintiún (21) años o más y vaya al lado del aspirante en el asiento delantero del pasajero**". (Negrillas suplidas). 9 LPRA sec. 5001 (51)(a).

Asimismo, con respecto a los requisitos para obtener un endoso para conducir motocicletas, la Ley Núm. 22-2000 establece los siguientes:

> Toda persona que se autorice a conducir una motocicleta en Puerto Rico deberá cumplir con los siguientes requisitos:
>
> (a) Estar capacitado mental y físicamente para ello.
> (b) **Haber cumplido los dieciocho (18) años de edad.**
> (c) Ser conductor autorizado de vehículos de motor.
> (d) Haber tomado un adiestramiento para conducir motocicletas y sobre las disposiciones de la "Ley de Tránsito de Puerto Rico" en lugares designados y autorizados por el Secretario y que los mismos sean ofrecidos por instructores debidamente certificados por el Secretario o su representante autorizado. Este adiestramiento será requisito únicamente si la persona no obtiene la puntuación mínima necesaria para aprobar el examen teórico o práctico la primera vez que tome [estos].
> (e) Haber aprobado un examen teórico y práctico ofrecido por instructores debidamente certificados por el Secretario en un

área designada y autorizada por [este] y obtener en su consecuencia una certificación de aprobación de parte del instructor.
.      .      .      .      .      .      .      . (Negrillas suplidas). 9 LPRA sec. 5057.

Examinadas las disposiciones anteriores y, bajo el marco interpretativo de los contratos de seguros y sus cláusulas de exclusión, es forzoso concluir que el término "*accompanied by*" **se refiere a la supervisión** *directa* **de "parent or guardian" en el jet ski _con_ el menor.** Ante la actividad sujeta a protección que limita la cobertura de la Póliza y, ante las interpretaciones posibles, coherentes y ___razonables___ que se le pueden dar al verbo en cuestión, no podemos refrendar que la locución es ambigua sobre aquella actividad que intenta excluir. La aseguradora buscaba limitar su exposición ante circunstancias de riesgos mayores, como sería que una persona menor de edad esté en uso de una motora acuática sin la asistencia y supervisión de sus padres, parientes adultos o sus tutores. Otra interpretación, incluso, obligaría a Universal a asegurar una actividad tajantemente ilegal según lo expone la Ley Núm. 430-2000, *supra*.

**Concluir lo contrario abonaría, además, a la contención de que una persona menor de edad de hasta un mínimo de seis años podría manejar una motora acuática completamente sola. Nuestro estado de derecho no permite semejante interpretación.** Recordemos que nuestra labor consiste en buscar el sentido y el significado que le daría una persona de inteligencia normal que fuese a comprar la póliza, a las

cláusulas en esta contenidas. <u>Coop. Ahorro y Cred. Oriental</u> <u>v. S.L.G.</u>, 158 DPR 714, 723 (2003). Las legislaciones sobre uso y manejo de vehículos de motor antes citadas han calificado el requisito de "acompañar" como el acto de estar en el mismo vehículo con el menor como un elemento de seguridad. Del mismo modo, una póliza de seguro buscaría limitar su riesgo excluyendo una actividad donde un menor haga uso de un vehículo con motor sin que un adulto le acompañe en este para asistirle.[17]

El hecho de que el término "*accompanied*" no esté definido expresamente en la Póliza no debe conducir a que se le dé un significado contrario al uso general y común de la expresión. Tampoco debemos avalar una interpretación que conlleve a resultados absurdos que no pueden sostenerse.

Cónsono con el análisis aquí enmarcado, cabe destacar el dictamen que emitió la Corte de Apelaciones del estado de Wisconsin en <u>Mueller v. McMillan Warner Ins. Co.</u>, 287 Wis. 2d 154 (2005).[18] Allí se interpretó el término "*accompanying*" para propósitos de un estatuto que prohíbe que cualquier

---

[17] En cuanto a las conclusiones especulativas y los intentos de comparación que se mencionan en la Opinión Disidente, basta con mencionar que ninguna de estas (correr bicicletas, montar caballos, etc.) cuenta con una ley especial que las regule; especialmente cuando en ellas está envuelta una persona menor de edad. Como bien exponen los compañeros en su disenso, "esas actividades no están conceptualizadas para que los acompañe un adulto", y no forman parte del análisis que estamos realizando en ese caso. La interpretación a la que arribamos está ceñida al contrato ante nos, enmarcado dentro de la actividad que se procuró proteger; es decir, **los recorridos guiados en motoras acuáticas.**

[18] Hemos reconocido en varias ocasiones el carácter persuasivo que tiene la jurisprudencia estatal y federal de Estados Unidos para auxiliarnos en nuestra labor adjudicativa en el área del Derecho de Seguros. Véanse: <u>Maderas Tratadas v. Sun Alliance et al.</u>, *supra*, pág. 904; <u>Molina v. Plaza Acuática</u>, *supra*, pág. 266; <u>Meléndez Piñero v. Levitt & Sons of P.R.</u>, *supra*, pág. 535.

persona adquiera bebidas alcohólicas para menores de edad que no estén acompañados de un "*parent, guardian, or spouse*" que haya alcanzado la edad legal para beber.[19]

En tal caso, los padres de un menor de edad argumentaron que, para propósitos del estatuto, no importaba si ellos estaban en el mismo cuarto con su hijo mientras consumía bebidas alcohólicas. Íd., pág. 163. Por el contrario, "bastaba con que bebiera 'en su proximidad' y en las mismas instalaciones, con su conocimiento". ("*It was enough that he drank 'in their proximity' and on the same premises, with their knowledge*"). (Traducción suplida). Íd., págs. 163-164. Sin embargo, al interpretar el significado de la palabra "*accompanied*", la Corte de Apelaciones de Wisconsin analizó varios estatutos que permitían a menores de edad participar en actividades si estaban acompañados por adultos, las cuales de otra forma estarían prohibidas. Por mencionar algunas, la Corte de Apelaciones expresó:

> *Children under twelve are allowed to operate snowmobiles, for example, if they are accompanied by an adult; in that statute, accompanied is defined as being on the same snowmobile. WIS. STAT. § 350.05(1) and (4). Similarly, children under twelve may operate ATVs if they are accompanied—defined as "subject to continuous verbal direction and control"—by an adult. WIS. STAT. § 23.33(1)(a) and (5)(a). Finally, children between twelve and fourteen years old are not allowed to hunt unless they are accompanied by an adult. WIS. STAT. § 29.304(2)(a).* Mueller v. McMillan Warner Ins. Co., *supra*, pág. 164.

De un estudio de estas legislaciones se puede interpretar que sirven propósitos similares: la supervisión

---

[19] Es menester resaltar que, si bien en este caso estamos interpretando un contrato de seguros, a diferencia de un estatuto, entendemos que el lenguaje y el espíritu de ambos son similares. En ese sentido, ambos establecen actividades que son cubiertas por cuerpos normativos y disponen ciertas exclusiones cuando ocurre una situación determinada.

del menor de edad a quien se le permite participar de actividades que generalmente no podrían realizar por su cuenta. Luego de evaluar lenguajes similares, la Corte de Apelaciones determinó en aquel caso que el menor de edad no fue "acompañado" por sus padres por el simple hecho de haber bebido en las mismas instalaciones en donde los últimos se encontraban. Es decir, era necesario cierto grado de supervisión, cercanía o de control sobre el menor que, bajo la situación fáctica del caso, no se dio. **Coincidimos con este análisis.**

En la alternativa, y aun si consideráramos que el término "*accompanied by*" según se utiliza en la Póliza tiene el significado que los demandantes pretenden adscribirle, es decir, que ese acompañamiento puede darse a distancia, —con lo cual, reiteramos, no coincidimos—, lo cierto es que tampoco se cumplió con el otro elemento de la cláusula sobre quién debía acompañar al menor; a saber, el "*parent or guardian*".

La palabra "*guardian*" puede definirse como "alguien o algo que guarda o custodia", así como "alguien que mantiene el cuidado de una persona o propiedad de otra".[20] A su vez,

---

[20] (Traducción suplida). Merriam-Webster Dictionary, 2024, https://www.merriam-webster.com/dictionary/guardian (última visita, 22 de abril de 2024).

Por su parte, el *Black's Law Dictionary* define el término "*guardian*" como:
"*A person lawfully invested with the power, and charged with the duty, of taking care of the person and managing the property and rights of another person, who, for defect of age, understanding, or self-control, is considered incapable of administering his own affairs. One who legally has the care and management of the person, or the estate, or both, of*

la Real Academia Española define los términos "guardián" como "persona que guarda algo y cuida de ello", mientras que "tutor" se define como "persona que ejerce la tutela".[21] Más específicamente, "tutela" significa aquella "[a]utoridad que, en defecto de la paterna o materna, se confiere para cuidar de la persona y los bienes de aquel que, por minoría de edad o por otra causa, no tiene completa capacidad civil".[22]

A partir de las definiciones esbozadas, es forzoso colegir que la menor M.B.Z. no estaba acompañada por alguno de sus padres o su tutor o tutora al momento de los hechos. **La acepción de los términos guardián o tutor, aun en sus usos más comunes y corrientes, no avala la inclusión de <u>cualquier</u> persona mayor de edad que no tenga ningún tipo de responsabilidad particularizada sobre aquella persona que está llamada a custodiar o tutelar.**

---

*a child during its minority*." Henry Campbell Black y otros [*et al.*], *Black's Law Dictionary*, 5ta ed., Minnesota, Ed. West Publishing Co., 1979, pág. 635.

Asimismo, la palabra en cuestión puede traducirse como: guardián, tutor o custodio. Reverso, 2024, https://www.reverso.net/text-translation#sl=eng&tl=spa&text=guardian (última visita, 22 de abril de 2024).

[21] Diccionario de la Lengua Española, 2023, https://dle.rae.es/guardi%C3%A1n?m=form&m=form&wq=guardi%C3%A1n (última visita, 22 de abril de 2024); Diccionario de la Lengua Española, 2023, https://dle.rae.es/tutor?m=form (última visita, 22 de abril de 2024).

[22] Diccionario de la Lengua Española, 2023, https://dle.rae.es/tutela?m=form (última visita, 22 de abril de 2024).

Además, a modo ilustrativo, tanto el derogado Código Civil de 1930 como el vigente Código Civil de 2020 disponen que la tutela tiene por objeto la guarda y la representación de la persona incapaz y la administración de sus bienes, o solamente de los bienes, de los que no se encuentran bajo la patria potestad, que son incapaces de gobernarse por sí mismos. Véanse: 31 LPRA sec. 5661; (31 LPRA sec. 661) (derogado). En ese sentido, se entiende como una de las causas de incapacitación parcial cuando la persona es **menor de edad**, no emancipada. 31 LPRA secs. 5614, 5662; (31 LPRA sec. 662) (derogado).

Dicho de otro modo, **esos conceptos no pueden incluir a una persona empleada que, por virtud de la póliza de seguros expedida a favor de su patrono –*única y exclusivamente para los recorridos guiados en motoras acuáticas*–, esté llamada a participar de la actividad, independientemente de la intervención de una persona menor de edad.**[23] En consecuencia, los empleados guías de East Coast no pueden catalogarse como tutores, guardianes o personas encargadas del grupo de menores de edad que alquilaron sus servicios, entre ellos, la menor M.B.Z. De llegarse a otro resultado, sostendríamos una interpretación completamente absurda.

En conclusión, la cláusula que debemos analizar dispone así:

> **THIS ENDORSEMENT CHANGES THE POLICY.**
> **PLEASE READ IT CAREFULLY**
> **CONDITION FOR MINORS**
>
> IT IS HEREBY UNDERSTOOD AND AGREED THAT CHILDREN BETWEEN THE AGES OF 6 AND 18 YEARS OF AGE <u>MUST</u> BE <u>ACCOMPANIED</u> BY A <u>PARENT</u> OR <u>GUARDIAN</u>, IN ORDER TO COMPLY WITH THE POLICY.[24]

---

[23] Nótese que la cláusula en cuestión dispone específicamente que ese menor tiene que estar acompañado de "a parent or guardian", no menciona que el menor puede estar acompañado de **cualquier** adulto. Si esa hubiese sido la intención de las partes la cláusula, hubiese incluido otros términos. Esto, de por sí, torna inmeritorio el argumento de los demandantes de que los guías de East Coast podían fungir como los tutores o encargados de todos esos menores. De hecho, esa contención haría totalmente superflua la cláusula de exclusión, pues la póliza cubre únicamente recorridos guiados. Es decir, <u>todos</u> los recorridos tienen que incluir necesariamente algún guía. Bajo el análisis de los demandantes, en todos los recorridos los guías fungen como padres, tutores y guardianes de los menores. ¿Qué actividad limita entonces la cláusula de exclusión? Con ese análisis se llegaría al absurdo de argumentar que un grupo de menores de edad, todos de 6 años, pueden salir a un recorrido con un guía y la póliza tendría que cubrir en la eventualidad de un accidente.

Por último, este Tribunal no está equiparando la figura del tutor o guardián, según se utiliza en la póliza que aquí se discute, con la designación de un tutor legal. Pudiera darse el caso que un abuelo o una abuela, un tío o una tía, o un familiar cercano sea considerado como un guardián, tutor o persona encargada. Sin embargo, no hay necesidad de hacer ese análisis hoy pues ninguna de estas figuras estaba presente cuando la menor M.B.Z. perdió la vida.

[24] Apéndice del *certiorari*, pág. 190.

En este accidente trágico y lamentable, la menor M.B.Z. iba en una motora acuática operada por otra persona menor de edad, sin que estuvieran acompañadas de sus padres o de sus tutores. Tras evaluar la cláusula de exclusión junto con las demás cláusulas de Póliza, a la luz de la totalidad de las circunstancias de este caso, no podemos avalar la postura de los demandantes. Ello, pues aún la interpretación más favorable de los términos de la póliza no provee para que la aseguradora responda por la conducta que estaba descubierta de protección, según surge claramente de la Póliza.

## IV

Por los fundamentos expuestos, se revoca la *Sentencia* que emitió el Tribunal de Apelaciones. En consecuencia, se desestima la causa de acción presentada en contra de Universal y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos.

Se dictará Sentencia de conformidad.


                                    Maite D. Oronoz Rodríguez
                                    Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rolando Barreto Nieves y otros

      Recurridos

        v.             CC-2023-0128

East Coast Water Sports, LLC y su aseguradora Universal Insurance Co.

      Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 22 de abril de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones. En consecuencia, se desestima la causa de acción presentada en contra de Universal y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emite una Opinión Disidente a la que se unen el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Suprem

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Rolando Barreto Nieves y otros | | |
|---|---|---|
| Recurridos | | |
| v. | CC-2023-0128 | |
| East Coast Water Sports, LLC y su aseguradora Universal Insurance Co. | | |
| Peticionarios | | |

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ, a la que se unen los Jueces Asociados señores RIVERA GARCÍA y ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 22 de abril de 2024.

Por considerar que en lo relacionado al contrato de seguro objeto del presente litigio, -- similar a como lo sentenciaron el foro primario y el foro apelativo intermedio --, existe cierta ambigüedad en cuanto al significado de los términos "*accompanied by*" y "*parent or guardian*" contenidos en determinada cláusula de exclusión que forma parte del mismo, lo que, -- contrario al curso de acción que hoy se sigue --, históricamente hubiese movido a los miembros de este Tribunal a interpretarlo de la forma más favorable al asegurado, disentimos. Veamos.

I.

Los hechos que dan margen al presente litigio no están en controversia. Allá para el 16 de junio de 2018, la

menor M.B.Z. se encontraba celebrando un cumpleaños junto a varios compañeros de escuela, todos menores de edad, en el Balneario La Monserrate, que ubica en el municipio de Luquillo, Puerto Rico. Como parte de la celebración, los menores allí congregados decidieron alquilar una motora acuática ("*jet ski*") a la compañía aquí demandada, East Coast Watersports, LLC (en adelante, "East Coast"). Ello, con el propósito de realizar un recorrido guiado ("*guided tour*") por el referido balneario luquillense.

Así las cosas, durante el mencionado recorrido guiado, dos empleados de East Coast acompañaron al grupo de menores de edad que había alquilado las motoras acuáticas. Éstos iban en una motora acuática separada, escoltando y guiando al grupo.

Lamentablemente, y mientras se realizaba el recorrido guiado en cuestión, la menor M.B.Z., quien iba como pasajera en una de las motoras acuáticas conducida por un compañero suyo, cayó de la misma y fue impactada por otra motora acuática que era conducida por otra persona. A raíz de este trágico incidente, la menor M.B.Z. perdió la vida.

Como consecuencia de lo anterior, el 5 de septiembre de 2018 los señores Rolando Barreto Nieves y Yanisse Zayas Gómez, padres la menor finada, la Sociedad Legal de Bienes Gananciales compuesta por ambos, y la menor E.B.Z. (hermana de M.B.Z., y representada en el pleito por sus padres) (en adelante, y en conjunto, "familia Barreto Zayas" o "los demandantes"), presentaron ante el Tribunal de Primera

Instancia una demanda en daños y perjuicios en contra de East Coast. En ésta, alegaron que la referida empresa fue negligente al no instruir debidamente a los arrendatarios de las motoras acuáticas sobre el uso que debían hacer de las mismas. Específicamente, adujeron que el personal de East Coast no instruyó a los usuarios de las motoras acuáticas sobre la distancia que debían mantener entre una y otra embarcación.

Aproximadamente un mes más tarde, entiéndase el 11 de octubre de 2018, la familia Barreto Zayas enmendó su demanda para incluir como parte demandada a la compañía de seguros Universal Insurance Co. (en adelante, "Universal"). Respecto a esta última, alegaron que la misma había expedido una póliza de seguro a favor de East Coast, la cual respondía por los daños alegados en su demanda.

Enterado de ello, el 16 de noviembre de 2019 Universal compareció ante el foro primario mediante una *Moción solicitando se dicte sentencia sumaria parcial*. En dicho escrito, la mencionada aseguradora planteó que, si bien era cierto que había expedido una póliza de seguro a favor de East Coast con vigencia del 12 de marzo de 2018 al 12 de marzo de 2019, la misma contenía ciertas cláusulas de exclusión que limitaban la cubierta ofrecida por ésta en situaciones como la de autos.

En particular, Universal manifestó que la póliza objeto del presente litigio solo cubría "recorridos guiados" en motoras acuáticas y que, en cuanto a la participación de

menores de edad, existía una condición restrictiva que requería que los menores de entre las edades de 6 a 18 años que usaran una motora acuática, estuvieran acompañados por ("*accompanied by*") uno de sus padres o un guardián ("*parent or guardian*").[1] En ese sentido, Universal arguyó que los hechos que ocasionaron la muerte de la menor M.B.Z., y que dieron lugar al caso de marras, no estaban cubiertos por la póliza expedida a favor de East Coast, debido a que la motora acuática en la que iba la menor M.B.Z. como pasajera estaba siendo conducida por un menor de edad, sin el debido acompañamiento.

Evaluado el referido escrito, el 28 de diciembre de 2018 los aquí demandantes presentaron ante el Tribunal de Primera Instancia una *Moción en oposición a moción solicitando que se dicte sentencia sumaria parcial*. **Ello, no sin antes haber enmendado su demanda el 8 de diciembre del mismo año, a los fines de alegar que durante el recorrido guiado que proveyó East Coast a la menor M.B.Z., ésta y sus demás compañeros, "estaban bajo la supervisión y acompañados por dos empleados de la compañía que les servían de guía".[2]**

Así pues, en su *Moción en oposición a moción solicitando que se dicte sentencia sumaria parcial*, la familia Barreto Zayas arguyó que era improcedente la solicitud de sentencia

---

[1] El texto de la referida condición restrictiva es el siguiente: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. CONDITION FOR MINORS: IT IS HEREBY UNDERSTOOD AND AGREED THAT CHILDREN BETWEEN THE AGES OF 6 AND 18 YEARS OF AGE MUST BE ACCOMPANIED BY A PARENT OR GUARDIAN, IN ORDER TO COMPLY WITH THE POLICY". Apéndice del *Certiorari*, Pág. 190.

[2] Apéndice del *Certiorari*, pág. 34.

sumaria presentada por Universal debido a que los términos de la póliza aquí bajo estudio no eran claros respecto a los significados de "*accompanied by*" y "*parent or guardian*". En consecuencia, y dada la ambigüedad sugerida, los demandantes alegaron que las referidas palabras debían interpretarse de la forma más favorable a los asegurados y que, por tanto, debía entenderse que por estar acompañados por dos empleados de East Coast (personas mayores de edad) que ofrecían el recorrido guiado y que fungían como encargados del grupo, no era de aplicación la cláusula de exclusión antes señalada. Por tanto, razonaron que los daños reclamados en su demanda sí estaban cubiertos por la póliza que la referida aseguradora expidió a favor de East Coast.

En respuesta al escrito presentado por la familia Barreto Zayas, el 1 de febrero de 2019 Universal compareció nuevamente ante el foro primario mediante una *Réplica a oposición a sentencia sumaria parcial*. En síntesis, sostuvo que el planteamiento de la familia Barreto Zayas era insostenible, puesto que el lenguaje de la póliza objeto del presente litigio resultaba claro para una persona razonable.

A juicio de la mencionada aseguradora, y contrario a lo señalado por los demandantes, al considerar la actividad acuática en cuestión el término "*accompanied by*" debía referirse, únicamente, a acompañar a los menores de edad en la misma motora acuática ("*jet ski*"). De igual forma, y en cuanto a los vocablos "*parent or guardian*", Universal sostuvo que éstos no podían referirse a cualquier persona, y mucho

menos a los empleados de East Coast que dirigieron el recorrido guiado, sino más bien a un padre, tutor o encargado legal de los menores en cuestión.

Establecido lo anterior, y habiéndosele anotado la rebeldía a East Coast por su incomparecencia al pleito, el 27 de junio de 2019 el Tribunal de Primera Instancia celebró una *Vista Argumentativa* relacionada a la solicitud de sentencia sumaria parcial presentada por Universal. En dicha vista, se discutió todo lo relativo al alcance de la póliza expedida por Universal a favor de East Coast y, en particular, a los significados de los términos "*accompanied by*" y "*parent or guardian*" contenidos en la cláusula de exclusión a la que hemos hecho referencia.

Examinados los planteamientos de ambas partes, el 20 de marzo de 2020 el foro primario dictó *Sentencia parcial*. Al así hacerlo, el Tribunal de Primera Instancia concluyó que, de conformidad con lo dispuesto en la póliza de seguro bajo estudio, los menores que hacían uso de las motoras acuáticas arrendadas por East Coast, debían estar acompañados por uno de sus padres, tutor o encargado. **En consecuencia, y no empece a que el foro primario determinó que "al momento del accidente, los menores estaban acompañados de dos (2) "tour guides" quienes supervisaban, acompañaban y dirigían a la menor y al resto de los participantes del tour guiado", dicho**

foro emitió una sentencia sumaria parcial a favor de Universal, y en contra de los aquí demandantes.[3]

Insatisfecha con la determinación del Tribunal de Primera Instancia, la familia Barreto Zayas instó ante el Tribunal de Apelaciones un primer recurso de *Apelación* relacionado con la causa de epígrafe, caso KLAN202000368. En el mismo, y a grandes rasgos, plantearon que el foro primario había errado al concluir que la póliza objeto del presente litigio no cubría los daños reclamados en su demanda.

Evaluados los alegatos de las partes, el 21 de octubre de 2020 el foro apelativo intermedio emitió una *Sentencia* mediante la cual revocó la *Sentencia parcial* apelada.[4] **En síntesis, el Tribunal de Apelaciones razonó que, siendo el contrato de seguros uno de adhesión, y habiendo controversia sobre el significado de las palabras "***accompanied by***" y "***guardian***",-- e interpretando la situación de la manera más favorable al asegurado como históricamente lo ha realizado este Tribunal --, no procedía dictar sentencia sumaria en el caso de autos.**

En consecuencia, el foro apelativo intermedio devolvió el caso al foro primario para que, a través de una vista evidenciaria, se dilucidara la intención de Universal al momento de pactar la póliza de seguro objeto del presente litigio. Solo de esta forma, entendió el Tribunal de

---

[3] Apéndice del *Certiorari*, pág. 41

[4] Dicha sentencia fue emitida por un panel compuesto por los jueces, honorables, Birriel Cardona (jueza ponente), Bonilla Ortiz y Cortés González.

Apelaciones, podía resolverse la controversia habida en torno a la ambigüedad en el significado de las palabras empleadas en la cláusula de exclusión de la póliza aquí bajo estudio.

Resuelto lo anterior, y cumpliendo con lo ordenado por el foro apelativo intermedio, el 29 de julio de 2022 el Tribunal de Primera Instancia celebró la referida vista evidenciaria. Allí, Universal presentó como evidencia la póliza de seguro objeto del presente litigio, ciertos correos electrónicos entre el Sr. Christian Camejo García, Director de Banca y Reseguro de Universal (en adelante, "señor Camejo García"), y el Sr. Jorge Bermúdez, productor de seguros de East Coast, así como los testimonios del señor Camejo García (junto a una declaración jurada suya) y del Sr. José Ortiz Rodríguez (vicepresidente de reclamaciones de Universal). Por su parte, la familia Barreto Zayas, no presentó prueba testifical. Ésta se limitó a presentar evidencia documental sobre las distintas acepciones de la palabra "*guardian*", así como una copia de la póliza objeto del presente litigio.

**Evaluada la prueba presentada ante sí, el 27 de septiembre de 2022 el Tribunal de Primera Instancia emitió una *Resolución* mediante la cual razonó que la póliza de seguro bajo estudio no era clara en lo que respecta al uso de los vocablos "*accompanied by*" y "*guardian*" y, por consiguiente, era de aquellas que en nuestro ordenamiento jurídico se clasifican como ambiguas. Ante esa patente ambigüedad, y en beneficio del asegurado, sostuvo que los daños reclamados en el presente litigio por la familia**

**Barreto Zayas estaban cubiertos por la póliza de seguro expedida por Universal a favor de East Coast.[5]**

Inconforme con la determinación del foro primario, Universal presentó ante el Tribunal de Apelaciones un segundo recurso de *certiorari* relacionado con la causa de epígrafe, caso KLCE202201185. En éste, alegó que el Tribunal de Primera Instancia había errado al determinar que los daños reclamados por los demandantes en su demanda estaban cubiertos por la póliza expedida por ésta a favor de East Coast.

Evaluados los alegatos de ambas partes, el foro apelativo intermedio dictó *Sentencia* confirmando el dictamen emitido por el Tribunal de Primera Instancia. **En palabras del Tribunal de Apelaciones, y en lo relacionado al presente caso, la prueba presentada por Universal ante el foro primario, y aquilatada por éste, -- a cuya apreciación venimos llamados a otorgar la consabida deferencia --, no logró subsanar la ambigüedad de la que adolecía la cláusula**

---

[5] En particular el Tribunal de Primera Instancia determinó que el testimonio del señor Camejo García, presentado por Universal, no aclaró el alcance del término "*accompanied by*" según lo alegado por éstos. Ello debido a que, según surge de la transcripción de la vista y de la propia *Resolución* del foro primario (véase, Apéndice del *Certiorari*, págs. 236-237 y págs. 311 y 323), el señor Camejo García se limitó a declarar sobre lo que éste entendía era la intención de las partes al pactar la póliza de seguro en cuestión lo cual resultó ser incongruente con lo que se había plasmado en el contrato, el cual, además, no contenía ningún tipo de definición sobre los vocablos aquí en controversia.

De igual forma, y en cuanto al significado de los términos "*parent or guardian*", el testimonio del señor Camejo García tampoco logró demostrar que éste tenía el alcance alegado por Universal. De hecho, el referido testimonio estableció que el acompañamiento debido no se limitaba a la presencia de un padre o tutor legal como hoy resuelve esta Curia, sino que también podía incluir la figura de un "encargado", término que tampoco estaba definido en el contrato bajo estudio. Apéndice del *Certiorari*, pág. 317. En consecuencia, el foro primario resolvió que la ambigüedad no había sido derrotada, por lo que interpretó la cláusula de exclusión aquí bajo estudio de la forma más favorable al asegurado.

**de exclusión contenida en la póliza de seguro bajo estudio.[6] Por consiguiente, y siendo el contrato de seguros uno de adhesión, había que interpretar la referida cláusula de la forma más favorable al asegurado.**

Aún insatisfecho con el resultado obtenido, el 21 de febrero de 2023 Universal compareció ante este Tribunal mediante un recurso de *Certiorari*. En el mismo, a grandes rasgos, señala que el Tribunal de Apelaciones erró al determinar que la póliza de seguro objeto del presente litigio cubría los daños reclamados en la demanda presentada por la familia Barreto Zayas.

Expedido el recurso y presentados los alegatos de las partes, una mayoría de este Tribunal, en un lamentable y triste desenlace, emite una *Opinión* mediante la cual revoca la *Sentencia* recurrida. Al así proceder, desestima la causa de acción en daños y perjuicios presentada por los demandantes en contra de Universal. Lo anterior, al concluir que, de un análisis de las palabras "*accompanied by*" y "*parent or guardian*" contenidas en la cláusula de exclusión de la póliza de seguro aquí bajo estudio, la única interpretación "posible y razonable" a la que se podía llegar era que, para fines de este caso, un guardián ("*guardian*") solo podía significar un padre, un pariente adulto o un tutor

---

[6] **En ese sentido, el foro apelativo intermedio razonó que, contrario a lo alegado por Universal, la cláusula de exclusión aquí en controversia no era clara en cuanto a que era necesario que los menores que arrendaban motoras acuáticas ("*jet ski*") estuvieran acompañados, en la misma motora acuática, por un adulto. Igualmente, el Tribunal de Apelaciones sostuvo que la referida póliza no exigía ni especificaba quién debía acompañar a los menores durante el recorrido ni de qué manera.**

de los menores y que, "el estar acompañado" ("*accompanied by*"), igualmente, solo podía significar que el guardián estuviese junto a los menores en la misma motora acuática.

Con el acercamiento que una mayoría de mis compañeros y compañeras de estrado le hace a la póliza de seguro objeto de estudio en el presente caso, así como a las cláusulas de exclusión que se incluyeron en la misma, no podemos estar de acuerdo. Por ello, disentimos. Explicamos por qué.

II.

A.

Como es sabido, debido a su vital importancia en nuestro ordenamiento socioeconómico, así como a su particular complejidad, el contrato de seguros ha sido catalogado por esta Curia como uno revestido del más alto interés público. *Birriel Colón v. Econo y otros*, 213 DPR ___, 2023 TSPR 120; *San Luis Center Apts et al. v. Triple-S*, 208 DPR 824, 831 (2022); *Maderas Tratadas v. Sun. Alliance*, 185 DPR 880, 896 (2012). Ante esta realidad, la industria de seguros está extensamente reglamentada mediante la Ley Núm. 77 del 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico (en adelante, "Código de Seguros") 26 LPRA sec. 101 *et seq.*, y está sujeta, de manera supletoria, a las disposiciones del Código Civil de Puerto Rico, *infra*.

El Código de Seguros define el contrato de seguros como aquel "mediante el cual una persona [(asegurador)] se obliga a indemnizar a otra [(asegurado)] o a pagarle o a proveerle un beneficio específico o determinable al producirse un

suceso incierto previsto en el mismo". 26 LPRA sec. 102. Por otro lado, y en lo pertinente a la controversia ante nuestra consideración, el contrato de seguro también puede disponer, de así pactarlo las partes, que el asegurador responderá "a terceros por aquella obligación económica que el asegurado venga legalmente obligado a pagar por razón de su responsabilidad legal por lesiones a personas […] como resultado de un acto u omisión culposo o negligente". R. Cruz, *Derecho de seguros*, San Juan, Publicaciones JTS, pág. 3.

Dicho ello, conviene mencionar aquí que, en aquellos escenarios en que tengamos que interpretar el alcance de un contrato de seguro, es nuestro deber acudir a las disposiciones hermenéuticas que contempla el propio Código de Seguros. Ello así, puesto que es en el referido estatuto donde se encuentra "la norma que ha de regir en el descargo de nuestra función interpretativa de las cláusulas contenidas en una póliza de seguro". *Maderas Tratadas v. Sun Alliance*, *supra*, pág. 897.

En esa dirección, la mencionada disposición legal, en su artículo 11.250, *infra*, dispone la forma en la que habrá de realizarse la correspondiente interpretación, en caso de ello ser necesario. En específico, el precitado articulado establece que:

> Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud

adherido a la póliza y que forme parte de ésta. Código de Seguros, Art. 11.250. 26 LPRA sec. 1125.

B.

Ahora bien, al realizar la interpretación en cuestión, debemos recordar también que este Tribunal ha reconocido que los contratos de seguro son contratos de adhesión. *Con. Tit. Acquamarina et al. v. Triple-S*, 210 DPR 344, 358 (2022); *San Luis Center Apts. et al. v. Triple-S*, *supra*, pág. 833; *Maderas Tratadas v. Sun Alliance*, *supra*, págs. 898-899. En este tipo de contrato la redacción del mismo recae casi exclusivamente en el asegurador, y la intervención del asegurado "se circunscribe a un simple acto de aceptación". R. Cruz, *op. cit.*, pág. 33.

**En consecuencia, al ser el contrato de seguro uno de adhesión, en reiteradas ocasiones esta Curia ha sentenciado que, al acercarnos al mismo, venimos llamados a interpretar sus cláusulas libremente a favor del asegurado y restrictivamente en contra del asegurador**. Véase *Con. Tit. Acquamarina et al. v. Triple-S*, *supra*, pág. 358; *Maderas Tratadas v. Sun Alliance*, *supra*, págs. 898-899; R. Cruz, *op. cit.*, pág. Pág. 34. **Máxime, si, como sucede en el caso de autos, se tratase de cláusulas dudosas o ambiguas.** *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871, 886 (2023); *San Luis Center Apts. et al. v. Triple-S*, *supra*, pág. 833; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1021 (2020).

Sobre el particular, es menester señalar que "cuando las disposiciones de la póliza, según prescritas en los artículo[s] 11.140 y 11.150 del Código de Seguro, sean susceptibles de diferentes interpretaciones se entenderán éstas como ambiguas". R. Cruz, *op. cit.*, pág. 34.[7] En esos casos, y ante la ausencia de una regla específica en el Código de Seguros para interpretar las cláusulas ambiguas, como ya mencionamos, serán aplicables, de forma supletoria, las normas de interpretación de los contratos contenidas en el Código Civil de Puerto Rico y su jurisprudencia interpretativa. *Con. Tit. Acquamarina et al. v. Triple-S*, *supra*, pág. 356; *Consejo de Titulares v. MAPFRE*, 208 DPR 761, 773 (2022); *San Luis Center Apts. et al. v. Triple-S*, *supra*, pág. 832.

A esos efectos, el Artículo 1238 del Código Civil establece que "las palabras que puedan tener distintas acepciones serán entendidas en aquella que sea más conforme a la naturaleza y objeto del contrato". 31 LPRA ant. sec. 3476.[8] **De otra parte, el Artículo 1233 del Código Civil,** *supra*, **dispone que "si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas".** De igual manera, el Artículo 1234 del Código

---

[7] Por otro lado, en el pasado hemos establecido que los términos de un contrato de seguro "se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas o ambigüedades, o sin que sea susceptible a diferentes interpretaciones". *San Luis Center Apts. et al. v. Triple-S*, 208 DPR 824, 833 (2022).

[8] Hacemos uso del Código Civil de Puerto Rico de 1930 (derogado) por ser éste el vigente al momento de suscribirse el contrato que hoy nos ocupa. Véase, Art. 1812 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 11717.

Civil añade que, al momento de auscultar la intención de las partes contratantes, se deberá atender, principalmente, a los actos de éstos, tanto los coetáneos a la contratación como a los posteriores. Véase, Art. 1234. Código Civil, 31 LPRA ant. sec. 3472. Por último, el Artículo 1236 del Código Civil, y su jurisprudencia interpretativa, sostienen que, cuando no es posible determinar la voluntad de las partes mediante una lectura literal de las cláusulas contractuales, "si alguna cláusula admite diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto". *Guadalupe Solís v. González Durieux*, 172 DPR 676, 684 (2007). Véase, además, Art. 1236 del Código Civil, 31 LPRA ant. sec. 3474.

Expuesto el marco jurídico que antecede y dado que el caso ante nuestra consideración aborda, particularmente, lo relativo a las cláusulas de exclusión en los contratos de seguro, pasamos pues, a reseñar el derecho aplicable a ello.

C.

Sabido es que las cláusulas de exclusión en los contratos de seguros son aquellas "que operan para limitar la cubierta provista por la aseguradora y, de este modo, no responder por determinados eventos, riesgos o peligros". *Maderas Tratadas v. Sun Alliance*, *supra*, pág. 899. Cónsono con lo anterior, suele decirse que el propósito de este tipo de cláusula es aminorar la responsabilidad del asegurador. R. Cruz, *op. cit.*, pág. 168. **Así pues, y dada la naturaleza del contrato de seguro como uno de adhesión, este tipo de**

cláusulas [entiéndase, las de exclusión] son generalmente desfavorecidas y deben interpretarse restrictivamente en contra del asegurador. *Maderas Tratadas v. Sun Alliance*, *supra*, pág. 899; *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 388 (2009). Véase, R. Cruz, *op. cit.*, pág. 168.

En ese sentido, cuando nos encontramos en el proceso de interpretar una cláusula de exclusión de responsabilidad y surjan dudas sobre la misma, éstas deberán resolverse de modo tal que se cumpla con el propósito principal de la póliza de seguro, el cual viene siendo dar cubierta al asegurado. Véase, *Molina v. Plaza Acuática*, 166 DPR 260, 267 (2005). Véase, además, R. Cruz, *op. cit.*, pág. 168. Por tanto,

> de haber duda en cuanto a si está incluido o excluido el riesgo sobre el cual gira una controversia, o en caso de duda o ambigüedad en torno a una disposición de la reclamación, la única y lógica interpretación, es que no se excluyan los derechos de reclamación que tiene el asegurado de los efectos de dicha cláusula de exclusión. (Énfasis nuestro). R. Cruz, *op. cit.*, pág. 178.[9]

Es decir, según se desprende de previas expresiones de este Tribunal, al momento de interpretar los contratos de seguro con cláusulas de exclusión, la juzgadora o juzgador debe ser cuidadoso y, según ya mencionamos, tal y como

---

[9] En otras palabras, y tal como se desprende de lo sentenciado por este Tribunal en *Quiñones López v. Manzano Posas*, 141 DPR 139, 154-155 (1996), en casos como estos no debemos perder de vista el hecho de que,

> "en caso de dudas en la interpretación de una póliza, ésta debe resolverse de modo que se realice el propósito de la misma: proveer protección al asegurado. Es por eso que no se favorecerán las interpretaciones sutiles que le permitan a las compañías aseguradoras evadir su responsabilidad. Corresponde a los tribunales buscar el sentido y significado que a las palabras de la póliza en controversia le daría una persona normal de inteligencia promedio que fuese a comprar la misma". (Énfasis nuestro).

mandata el Artículo 1238 del Código Civil, *supra*, debe tomar en consideración las acepciones de las palabras que sean más conformes a la naturaleza y objeto del contrato. **Ello, pues, las interpretaciones literales del texto contractual también nos pueden llevar a resultados absurdos, incorrectos y a cometer injusticias.** Véase, *Quiñones López v. Manzano Posas*, 141 DPR 139, 156-157 (1996).

### III.

De otra parte, y para finalizar, en nuestro ordenamiento jurídico "es principio reiterado que los tribunales apelativos otorgarán gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". *S.L.G. Rivera-Pérez v. S.L.G. Díaz-Doe et al.*, 207 DPR 636, 657 (2021). Véase, además, *Pueblo v. Arlequín Vélez*, 204 DPR 117, 146-147 (2020); *Laboy Roque v. Pérez y otros*, 181 DPR 718, 744 (2011). Como consecuencia de ello, en el pasado hemos manifestado que, un tribunal apelativo solo intervendrá con la determinación de hechos de un tribunal de instancia si "en la actuación del juzgador de hechos medió pasión, prejuicio o parcialidad" o si éste hubiese incurrido en un error manifiesto. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Véase, además, *S.L.G. Rivera-Pérez v. S.L.G. Díaz-Doe et al.*, *supra*, pág. 658; *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

La razón detrás de toda esta norma de deferencia radica en el reconocimiento de que, de ordinario, los juzgadores de

hechos se encuentran en una mejor posición para evaluar, aquilatar y adjudicar la prueba testifical presentada ante sí. *Pueblo v. Martínez Toro*, 200 DPR 834, 857-858 (2018); *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). Después de todo son éstos, quienes pueden apreciar mejor la forma en que testifican los testigos, sus comportamientos, y la totalidad de las circunstancias que acompañan a la declaración testifical y que "se pierden en la letra muda de las actas". *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1975). Véase, además, *Rivera-Pérez v. S.L.G. Díaz-Doe et al.*, *supra*, pág. 658; *S.L.G. Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009).

Es, pues, a la luz de la normativa antes expuesta que procedemos, -- desde la disidencia --, a disponer de la causa de epígrafe.

## IV.

Como mencionamos anteriormente, en el presente caso, la controversia que pende ante nuestra consideración está limitada a resolver si la póliza de seguro expedida por Universal a favor de East Coast cubre los daños que reclama la familia Barreto Zayas por la muerte de su hija durante su participación en un recorrido guiado en motora acuática ("*jet ski*") ofrecido por la referida empresa aquí demandada. **En específico, la controversia se ha centrado en determinar si, a la luz del texto de la referida póliza, los términos "*accompanied by*" y "*parent or guardian*" requerían que, para poder brindar la cubierta en cuestión, los menores de edad**

**que participaran en el mencionado recorrido guiado estuvieran acompañados en una misma motora acuática ("*jet ski*") por sus padres, parientes adultos o tutores. Esto, a pesar de que en ninguna parte de la póliza aquí en controversia se definían los ya mencionados términos y a pesar de que el Tribunal de Primera Instancia, -- así como el Tribunal de Apelaciones al confirmar la *Resolución* emitida por éste --, luego de celebrar la correspondiente vista evidenciaria, concluyera que no había sido la intención de Universal el otorgarle ese significado a las palabras aludidas al momento de pactarse el contrato.**

Al acercarse a la mencionada controversia, una mayoría de este Tribunal, en un lamentable proceder, resuelve que los daños que la familia Barreto Zayas reclama en su demanda no están cubiertos por la póliza de seguro expedida por Universal a favor de East Coast. Ello, por entender que los términos "*accompanied by*" y "*parent or guardian*" utilizados en la póliza objeto del presente litigio requieren, -- distinto a lo ocurrido en la causa de epígrafe --, que un padre, pariente adulto o lo que aparenta ser un tutor legal de los menores en cuestión se encuentre en la misma motora acuática ("*jet ski*") utilizada por éstos. Como ya mencionamos, con el acercamiento que una mayoría de mis compañeros y compañeras de estrado le hace a la póliza de seguro bajo estudio, y a las cláusulas de exclusión que se

incluyeron en la misma, no estamos de acuerdo. Por ello, disentimos.[10] Nos explicamos.

Y es que, en el presente pleito, trabada la controversia en torno al significado de las palabras ya aludidas, el Tribunal de Apelaciones, en el primero de los casos relacionados a la causa de epígrafe que se llevó ante su consideración, entiéndase el caso KLAN202000368, le ordenó al Tribunal de Primera Instancia la celebración de una vista evidenciaria para que se dilucidara la intención y significado que las partes quisieron darle a los términos "*accompanied by*" y "*parent or guardian*" al momento de pactar la póliza.[11] Cumpliendo con lo ordenado, el foro primario celebró la vista de rigor, y luego de apreciar y aquilatar la prueba presentada ante sí, resolvió que la ambigüedad de los términos en cuestión no había sido derrotada por Universal y, en consecuencia, -- valiéndose de precedentes de este Tribunal -- interpretó la póliza de la forma más favorable al asegurado, dando así por cubiertos los daños reclamados por la familia Barreto Zayas en su demanda.[12]

---

[10] Hacemos constar nuestra preocupación ante el lastimoso proceder que hoy emprende una mayoría de este Tribunal. Ello, porque nos inquieta que, con la *Opinión* que hoy se emite, así como con la recientemente emitida en el caso *Serrano Picón v. Multinational Life Ins.*, 212 DPR ___ (2023); 2023 TSPR 118 (véanse, expresiones disidentes del Juez Asociado señor Rivera García; y opiniones disidentes de los Jueces Asociados señores Estrella Martínez y Colón Pérez); se esté instaurando en nuestro ordenamiento jurídico una nueva norma hermenéutica a la hora de interpretar cláusulas de exclusión en contratos de seguros que, reiteradamente, perjudica a las personas aseguradas en vez de favorecerlos como era habitual en nuestro ejercicio interpretativo.

[11] Cabe señalar que dicha decisión fue recurrida ante nuestra consideración, caso CC-2021-0118, mas el recurso no fue expedido.

[12] **A saber, y como ya hemos mencionado en el escolio 5 de este escrito, el foro primario determinó que el testimonio del señor Camejo García,**

A pesar del correcto proceder del foro primario, el cual fue confirmado por el foro apelativo intermedio en un segundo recurso llevado ante su consideración, caso KLAN202201185, una mayoría de este Tribunal, sin que mediara justificación que ameritara nuestra intervención con la referida determinación, revocó la *Resolución* y *Sentencia* recurridas. A esos efectos, y empleando un análisis a nuestro juicio en extremo injusto, concluyó que la palabra "*accompanied by*", necesariamente tenía que significar "acompañar en la misma motora acuática"; y que el término "*parent or guardian*" significaba que era necesario que los menores de edad estuvieran "acompañados por" un progenitor de éstos, un pariente adulto o, en la alternativa, por lo que a todas luces se asemeja a un tutor legal según lo describe nuestro ordenamiento civil.[13] Fallan, malamente, mis compañeros y

---

presentado por Universal, no aclaró el alcance del término "*accompanied by*" según lo alegado por éstos. Ello debido a que, según surge de la transcripción de la vista y de la propia *Resolución* del foro primario (véase, Apéndice del *Certiorari*, págs. 236-237 y págs. 311 y 323), el señor Camejo García se limitó a declarar sobre lo que éste entendía era intención de las partes al pactar la póliza de seguro en cuestión lo cual resultó ser incongruente con lo que se había plasmado en el contrato, el cual no contenía ningún tipo de definición al respecto.

De igual forma, y en cuanto al significado de los términos "*parent or guardian*", el testimonio del señor Camejo García tampoco logró demostrar que éste tenía el alcance alegado por Universal. De hecho, el referido testimonio estableció que el acompañamiento debido no se limitaba a la presencia de un padre o tutor legal como hoy resuelve esta Curia, sino que también podía incluir la figura de un "encargado", término que tampoco estaba definido en el contrato bajo estudio. Apéndice del *Certiorari*, pág. 317.

En consecuencia, el foro primario resolvió que la ambigüedad en los términos aquí en controversia no había sido derrotada, por lo que interpretó la cláusula de exclusión aquí bajo estudio de la forma más favorable al asegurado.

[13] Véase, escolio 23 de la *Opinión*.

compañeras de estrado con su proceder. Dos son las razones que nos mueven a arribar a dicha conclusión.

En primer lugar, según la Real Academia de la Lengua Española, la palabra "acompañar" tiene el significado de "estar o ir en compañía de otra u otras personas".[14] Igualmente, son sinónimos de "acompañar" las palabras "escoltar" y "convoyar", entre otros. *Íd.* Tal definición, contrario al resultado al que se llega en la *Opinión* que hoy emite una mayoría de este Tribunal, coincide con el acercamiento que le hicieran los foros *a quo* al término bajo análisis, por lo que la presencia de empleados de East Coast como guías, escoltas o acompañantes del grupo que realizaba el recorrido, era suficiente para brindar el acompañamiento requerido por la póliza de seguro expedida por Universal a favor de East Coast.[15] Con dicha apreciación, coincidimos.[16]

---

[14] Diccionario de la Lengua Española, 2023, https://dle.rae.es/acompa%C3%B1ar, (última visita, 14 de marzo de 2024).

[15] Sobre el significado que debe tener el vocablo "*accompanied by*", una mayoría de este Tribunal aduce que ésta tenía que significar estar juntos en la misma embarcación, debido a que la intención de Universal -- que, dicho sea de paso, repetimos, el Tribunal de Primera Instancia no encontró probada -- era ofrecer la mayor seguridad a los pasajeros de la embarcación y limitar su exposición ante circunstancias de riesgos mayores, lo que no podía lograrse de ninguna otra manera.

Entendemos, en cambio, que el requerimiento de que el arrendamiento de motoras acuáticas ("*jet ski*") se limitara a recorridos guiados por empleados de East Coast, satisfacía la preocupación e intención que la *Opinión* mayoritaria entiende tuvo Universal al momento de pactar la póliza objeto del presente litigio.

[16] Y es que, somos del criterio que refrendar la interpretación que hoy hace una mayoría de mis compañeros y compañeras de estrado del término "*accompanied by*" nos llevaría a un absurdo semántico que trastocaría innecesaria y sustancialmente la industria de seguros en Puerto Rico y, particularmente, los comercios que se dediquen a la prestación de servicios en actividades de recreo y turísticas que impliquen recorridos guiados. Ello, dado que la interpretación pautada del referido concepto trastocará e imposibilitará el ofrecimiento de múltiples servicios, como lo sería -- a modo de ejemplo -- recorridos en bicicletas, caballos o machinas de entretenimiento para infantes, las cuales no están

En segundo lugar, y en lo relacionado al análisis del significado de los vocablos "*parent or guardian*", si algo surge de la prueba documental que obra en autos es que el alcance de dichas palabras no tenía la pretensión de llegar tan lejos, como ha hecho la mayoría mis compañeros y compañeras de estrado, de intentar equipararlo con la figura del tutor legal. Y es que, según se desprende de un correo electrónico que el señor Camejo García enviara al Sr. Jorge Bermúdez, productor de seguros de East Coast, el 2 de marzo de 2018, el acompañamiento aludido se cumplía si el menor o la menor de edad estaba acompañado "por un padre, pariente o guardián".[17] Es decir, aun utilizando el lenguaje castellano en la comunicación electrónica a la que hemos hecho referencia, y contrario a lo que se resuelve en el día de hoy, el representante de Universal no hizo referencia a la palabra "tutor legal" en ninguna parte de su mensaje.

**Sobre este extremo, somos del parecer de que equiparar la palabra "guardián" a lo que aparenta ser un tutor legal, -- según lo contempla nuestro ordenamiento civil[18] --, para casos como el de autos, constituye un peligroso precedente que pudiera trastocar las interrelaciones habituales que se dan en las familias puertorriqueñas. Así, en eventos**

---

conceptualizadas para que los acompañe un adulto, entre multiplicidad de eventos recreativos. Como bien se reconoce en la *Opinión* que hoy emite este Tribunal, este asunto no es atendido en el caso de marras. Véase, escolio 24 de la *Opinión*.

[17] Apéndice del *Certiorari*, pág. 199.

[18] Véase, escolio 23 de la *Opinión*.

**lamentables como el aquí sucedido, nos corremos el riesgo de que, por estar los menores afectados bajo la supervisión de un abuelo, tío, o familiar cercano, -- y no de sus progenitores con patria potestad, ni de un tutor legal según definido en el Código Civil --, éstos queden sin la posibilidad de ser indemnizados ante la aplicación de cláusulas como la del caso que nos ocupa.** Lo anterior no fue atendido con claridad en el presente caso, como bien lo reconoce en su Opinión una mayoría de este Tribunal.[19]

En fin, no albergamos duda alguna de que los dos empleados mayores de edad de East Coast que acompañaban y escoltaban a los menores que hacían uso de las motoras acuáticas ("*jet ski*"), que la referida empresa les arrendó, fungían como guardianes de éstos, ello según requerido por la póliza de seguro expedida por Universal a favor de East Coast. Por consiguiente, los daños reclamados por la familia Barreto Zayas, como consecuencia de la pérdida de su hija menor de edad mientras ésta participaba de un recorrido guiado en motora acuática ("*jet ski*") ofrecido por East Coast, estaban cubiertos por la póliza de seguro que a su favor expidió Universal.

V.

No se cometieron, pues, los errores señalados. Por ello, disentimos.

Ángel Colón Pérez
Juez Asociado

---

[19] Véase, escolio 24 de la *Opinión*.