Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| COMISIONADO DE SEGUROS DE PUERTO RICO<br><br>Recurrido<br><br><br>V.<br><br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Recurrente | KLRA202400466 | *Revisión de Decisión Administrativa* procedente de la Oficina del Comisionado de Seguros de Puerto Rico<br><br>Caso Núm.: I-2023-68<br><br>Sobre: Violación a los Artículos 27.161(3), (4), (6) y (17) del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 2716a(3), (4), (6) y 17)<br>Investigación: I-VII-26344-2023 |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de octubre de 2024.

El 22 de agosto de 2024, compareció ante este Tribunal de Apelaciones, MAPFRE Praico Insurance Company (en adelante, MAPFRE o parte recurrente), mediante *Recurso de Revisión Judicial*. Por medio de este, nos solicita que revisemos la *Resolución* emitida el 14 de junio de 2024, y notificada el 17 de junio de 2024 por la Oficina del Comisionado de Seguros de Puerto Rico (en adelante, OCS o parte recurrida). En virtud de la aludida *Resolución,* el foro recurrido declaró No Ha Lugar la moción de desestimación presentada por la parte recurrente.

Por los fundamentos que adelante se exponen, se confirma la *Resolución* recurrida.

Número Identificador

SEN2024 _____

**I**

El 1 de septiembre de 2024, el señor Clyde Fasick Juliá (en adelante, señor Fasick Juliá o Solicitante), presentó ante la OCS, una solicitud de investigación para que se investigara si MAPFRE había actuado correctamente al denegar el pago de la reclamación número 20231271598 (en adelante, la reclamación), a su nombre y de su esposa, la señora Ileana Fumero Pérez. La reclamación fue llevada a cabo por motivo de cancelación de un viaje programado, bajo la póliza de seguro de viaje número 122123800632 (en adelante, la Póliza), por hospitalización del señor Fasick Juliá.

A tales efectos, el 3 de noviembre de 2023, notificada el 6 de noviembre de 2023, la Oficina del Comisionado de Seguros emitió una *Orden*. En virtud de la *Orden*, la OCS expresó que como resultado de la investigación encontró lo siguiente:

1. El 26 de marzo de 2023, el Solicitante y la Asegurada, cumplimentaron la solicitud de seguro de viaje, en adelante denominada "la Solicitud", de la Póliza, en el portal de Internet del Asegurador para su viaje programado del 13 al 16 de abril de 2023.

2. El 11 de abril de 2023, dos (2) días antes de la salida del viaje el Solicitante tuvo que ser atendido de emergencia en el Hospital Ashford, Puerto Rico, en adelante denominado "el Hospital", por un fuerte dolor de cabeza que le provocó un derrame de macroadenoma en la pituitaria.

3. A raíz del diagnóstico el Solicitante estuvo en el Hospital bajo cuidado intensivo hasta que fue traslad[ad]o el 13 de abril de 2023, al Hospital Universitario en Centro Médico de Puerto Rico, donde fue operado por un neurocirujano y fue dado de alta el 17 de abril de 2023.

4. Por lo que, el Solicitante estuvo hospitalizado del 11 al 17 de abril de 2023.

5. El 20 de abril de 2023, la Asegurada presentó al Asegurador la Reclamación por cancelación de viaje bajo la Póliza por hospitalización del Asegurado.

6. El 10 de mayo de 2023, el Asegurador acusó recibo de la Reclamación y notificó por correo electrónico drafumero@gmail.com a la Asegurada.

7. El 31 de agosto de 2023, el Asegurador le notificó que la Reclamación había sido denegada.

8. El Asegurador basó su determinación en denegar la Reclamación basado en el Artículo III de la Póliza "Cubierta Asistencia al Asegurado", que dispone lo siguiente:

"1.

11. Cancelación de viaje

La Compañía indemnizará al Asegurado por la cantidad de dinero pagado para la compra de los boletos de viaje, hospedaje de hotel y/o excursión que no sea reembolsada al Asegurado por el proveedor de servicio correspondiente. En ningún caso la indemnización excederá la cantidad contratada por concepto de la cancelación total del crucero, tren o costo por traslado aéreo, hospedaje de hotel y/o excursión cuando el Asegurado se vea en la obligación de cancelar el viaje por razón de fallecimiento, Accidente o Enfermedad:

a) Que requiera la hospitalización del Asegurado o su fallecimiento; o

b) De un familiar cercano del Asegurado, todos resientes en Puerto Rico.

La Compañía se reserva el derecho de realizar una estadía por razón de hospitalización del Asegurado pericia médica comprobatoria.

El Asegurado tiene hasta un máximo de setenta y cinco (75) días previo a la fecha del viaje para cancelarlo según las condiciones contratadas en esta póliza.

De igual forma, la OCS expuso el argumento de la parte recurrente a la OCS, que lee como sigue:

Luego de evaluar la evidencia provista por el Solicitante, la ajustadora concluyó que la cancelación del viaje del Solicitante no estaba cubierta bajo el seguro. El ajuste concluyó que la emergencia médica ocurrió antes de la fecha de salida del viaje y vigencia del seguro. Ya para el 12 de abril de 2023, el Solicitante estaba hospitalizado y tenía conocimiento de que no podría viajar. En este caso la notificación del reclamo ocurrió posterior al periodo de notificación…

La OCS indicó que, el argumento de la parte recurrente respecto a la denegatoria de la reclamación demostraba que MAPFRE no había resuelto la Reclamación de buena fe, debido a que

no había realizado una evaluación basada en la situación que se encontraba el Solicitante, hospitalizado y en cuidado intensivo, lo que le impidió notificar la cancelación de su viaje. A tales efectos, concluyó que al MAPFRE "dejar de adoptar e implementar métodos razonables para la investigación y no intentar llevar a cabo un ajuste equitativo de la misma y denegar la Reclamación", violentó el Art. 27.161(3), (4), (6) y (17) del Código de Seguros de Puerto Rico. Añadió que, la violación de los aludidos artículos era causal para la imposición de sanciones. Por lo anterior, determinó lo siguiente:

1. **ORDENO** al Asegurador resolver con el pago de la Reclamación y presentar prueba de ello a la OCS, dentro del término de veinte (20) días, contados a partir de la fecha de notificación de la presente Orden.

2. **IMPONGO** al Asegurador una multa administrativa de $15,000.00, por la violación a los Artículos 27.161(3)(4)(6) y (17) del Código de Seguros de Puerto Rico, supra.

Luego de varios trámites procesales, innecesarios pormenorizar, la parte recurrente presentó la *Solicitud de Resolución Sumaria*. Por medio de la anterior, sostuvo que, previo a la notificación de la *Orden*, MAPFRE reconsideró la denegatoria de la reclamación y realizó el pago correspondiente a la Asegurada y al Solicitante, conforme a los términos dispuestos en la Póliza. Alegó que, al tomar en cuenta el pago de la reclamación, y que del descubrimiento de prueba y de la *Orden* no surgía notificación a MAPFRE de las conductas o hechos específicos que sostenían la alegada violación a los incisos del Art. 27.161, procedía que se desestimara la controversia sumariamente. Arguyó que, lo anterior, debido a que, la controversia del pago del seguro de viaje había sido remitido a los Asegurados trece (13) días antes a la emisión de la *Orden*. Añadió que, no existía prueba de la supuesta violación al Art. 27.161 del Código de Seguros. Asimismo, expuso diecisiete (17) hechos que, a su juicio, no se encontraban en controversia. A tales

fines, solicitó la desestimación sumaria de la *Orden* bajo el fundamento de academicidad.

Por otro lado, la OCS, también presentó *Solicitud de Resolución Sumaria*. Por conducto de su representación legal, sostuvo que, una mirada a la prueba documental demostraba la ausencia de controversias sobre los hechos materiales del caso, y que por ello, debía resolverse de forma sumaria sin la necesidad de una vista evidenciaria. Planteó que, la *Orden* emitida el 3 de noviembre de 2024 debía ser confirmada. Acotó que, el hecho que MAPFRE hubiese realizado el pago de la reclamación no implicaba que esta no hubiese infringido el Art. 27.161 del Código de Seguros, debido a que, para el 31 de agosto de 2023, ya los había infringido.

En respuesta, MAPFRE presentó la *Oposición a la Solicitud de Resolución Sumaria de OCS*. Reiteró lo argumentado en su solicitud de sentencia sumaria, en específico, que el pago de la reclamación fue emitido mediante reconsideración previo a la expedición de la *Orden* y que esto convertía la controversia en académica. Recalcó que procedía que se resolviera sumariamente a su favor y se desestimara la *Orden* por ausencia de prueba que justificara la concesión de un remedio.

Por su parte, la OCS, presentó la *Oposición a Solicitud de Resolución Sumaria presentada por MAPFRE Insurance Company*. Expresó que, reiteraba y adoptaba los argumentos en derecho que fueron planteados en su *Solicitud de Resolución Sumaria*. Indicó, además, que, la OCS advino en conocimiento del pago de la reclamación posterior a la notificación de la *Orden*. No obstante, entendía que la denegación del 31 de agosto de 2024 por parte de MAPFRE, constituía una violación a los incisos del Art. 27.161.

Finalmente, el 14 de junio de 2024, el foro recurrido emitió la *Resolución* cuya revisión nos ocupa. En su *Resolución,* el

Comisionado de Seguros esbozó los siguientes hechos esenciales y materiales no controvertidos:

1. El Asegurador es un asegurador autorizado debidamente por la OCS para contratar negocios de seguros en esta jurisdicción.

2. El 26 de marzo de 2023, el Solicitante y la Asegurada cumplimentaron la solicitud de seguro de viaje de la Póliza en el portal de Internet del Asegurador, para un viaje programado del 13-16 de abril de 2023.

3. El 11 de abril de 2023, dos (2) días antes de la salida del viaje, el Solicitante tuvo que ser atendido de emergencia en el Hospital Ashford, Puerto Rico, el adelante "el Hospital", por un fuerte dolor de cabeza que le provocó un derrame de macroadenoma en la pituitaria.

4. A raíz del diagnóstico, el Solicitante estuvo en el Hospital Universitario en Centro Médico de Puerto Rico, donde fue operado por un neurocirujano y fue dado de alta el 17 de abril de 2023.

5. El Solicitante estuvo hospitalizado del 11 al 17 de abril de 2023.

6. El 20 de abril de 2023, el Solicitante y la Asegurada presentaron la Reclamación al Asegurador por la cancelación de viaje bajo la Póliza, por hospitalización del Solicitante.

7. El 10 de mayo de 2023, el Asegurador acusó recibo de la Reclamación y lo notificó a la Asegurada.

8. El 31 de agosto de 2023, el Asegurador le notificó al Solicitante que la Reclamación había sido denegada, a saber y en parte:

   Acusamos recibo de su solicitud de reembolso por la cancelación de su viaje con fecha de salida del 13 de abril de 2023 y de regreso el 16 de abril de 2023, bajo la **CUBIERTA DE ASISTENCIA AL ASEGURADO del SEGURO DE VIAJE PLAN PLATINUM**. Siendo los hechos que motivan la reclamación la cancelación de su viaje, estamos evaluando su reclamación a través de la cubierta de Asistencia al Asegurado (Sección III), Inciso número 11, Cancelación de Viaje.

   **Sección III.**

   **<u>CUBIERTA DE ASISTENCIA AL ASEGURADO</u>**

   Esta sección incluye las cubiertas al **Asegurado** y los servicios a prestarse de acuerdo con las condiciones que se establecen a continuación.

Los límites establecidos bajo el plan seleccionado…

El inciso 11. Cancelación de viaje reza de la siguiente forma:

11. CANCELACIÓN DE VIAJE

"La **Compañía** indemnizará al **Asegurado** por la cantidad de dinero pagado para la compra de los boletos de **viaje**, hospedaje de hotel y/o excursión que no sea reembolsada al Asegurado por el proveedor de servicio correspondiente. En ningún caso la indemnización excederá la cantidad contratada por concepto de la cancelación total del crucero, tren o costo por traslado aéreo, hospedaje de hotel y/o excursión cuando el **Asegurado** se vea en la obligación de cancelar el viaje por razón de fallecimiento, **Accidente o Enfermedad**:

a. Que requiera la **hospitalización** del **Asegurado** o su fallecimiento; o

b. de un **familiar cercano** del **Asegurado** todos residentes de Puerto Rico.

La compañía se reserva el derecho de realizar una pericia médica comprobatoria.

"El **Asegurado** tiene hasta un máximo de setenta y cinco (75) días **previos** a la fecha del viaje para cancelarlo según las condiciones contratadas en esta póliza."

Según surge de nuestro expediente su solicitud de reembolso por Cancelación de Viaje fue reportada el 20 de abril de 2023, término en exceso de los 75 días previos a su viaje, lo cual es una condición requerida para la activación de la cubierta antes citada.

De acuerdo con lo anterior, no es posible proveer cubierta a su reclamo. Por tal razón hemos procedido a cerrar nuestro expediente sin trámite adicional. De usted entender que tiene evidencia adicional que permita realizar una reconsideración de la reclamación, no dude en comunicarse con nosotros.

**MAPFRE** se reserva el derecho de aplicar todas y cada una de las cláusulas, condiciones, exclusiones, definiciones, límites y/o endosos del contrato de seguros. (Énfasis en el original)

9. El Solicitante y la Asegurada no presentaron una solicitud de reconsideración ante el Asegurador.

10. El 1 de septiembre de 2023, el Solicitante presentó ante la OCS una solicitud de investigación para que

investigara si el Asegurador había actuado correctamente cuando denegó el pago de la Reclamación por concepto de cancelación del viaje programado, por su hospitalización.

11. El 21 de septiembre de 2023, en Contestación a Requerimiento de Información Núm. I-26344-2023 de 6 de septiembre de 2023, a la que se le adjuntó la solicitud de investigación, el Asegurador indicó a la OCS:

1. …

4. MAPFRE apertura la reclamación número 20231271598 bajo el seguro número 1221238006352. El 10 de mayo de 2023 la ajustadora le envió un correo electrónico al solicitante pidiendo documentos que evidenciaran su reclamo. El 12 de mayo de 2023, el Solicitante sometió proveyó [sic] varios documentos, por lo que la ajustadora le envió un correo electrónico solicitando todos los documentos mencionados en el correo del 10 de mayo de 2023. El 16 de mayo de 2023 el solicitante envió la misma evidencia provista anteriormente y el formulario de reclamo completado. El 18 de mayo de 2023, la ajustadora volvió a solicitar los documentos pendientes que pidió en la comunicación inicial.

5. El 5 de junio de 2023, el solicitante sometió parte de la evidencia solicitada y el caso fue referido a la unidad de servicios médicos para su evaluación. Al día siguiente, la unidad médica solicitó que se proveyera el récord completo para evaluar el caso, y la ajustadora envió un correo electrónico solicitando los documentos.

6. La ajustadora recibió documentos parciales el 22 de junio de 2023 y el Solicitante le informó que había pedido la evidencia restante. El 21 de julio de 2023, la ajustadora se comunicó con el solicitante para pedir la evidencia restante, reiterando que era necesaria para completar la evaluación del caso. El 11 de agosto de 2023 la evidencia fue recibida y remitida para análisis por la unidad médica. La ajustadora discutió los récords médicos con la unidad médica y recibió la evaluación el 29 de agosto de 2023.

7. La ajustadora revisó la totalidad del expediente del caso – incluyendo la evidencia provista por el reclamante – y la póliza para completar el ajuste. El 31 de agosto de 2023, la ajustadora le envió al Solicitante una carta por correo electrónico notificando la determinación del ajuste; concluyendo que la reclamación no se notificó a la aseguradora

dentro del término requerido por la póliza, y que se informó el reclamo tras finalizar el periodo de vigencia del seguro. La ajustadora notificó al Solicitante la denegación de la reclamación y cerró el expediente sin trámite adicional.

8. ...

9. Cabe señalar que, la parte **VI, Condiciones Generales** de la cubierta establece el requisito de notificación del Asegurado tras la ocurrencia de un siniestro que propicie un reclamo.

### G. DEBERES DEL ASEGURADO

De ocurrir un Siniestro, el **Asegurado** estará obligado a:

1. Notificación

   a. El Asegurado deberá notificar inmediatamente una ocurrencia para obtener cubierta bajo esta póliza.

10. El seguro define **siniestro** como la **Emergencia** que resulta en la prestación de las cubiertas y/o beneficios descritos en la póliza. El ajuste concluyó que la cancelación del viaje fue notificada a MAPFRE fuera del término de setenta y cinco días provisto por el seguro.

11. ...

12. Inconforme con la determinación del ajuste, el Solicitante recurrió a la OCS para dilucidar la controversia. alegó que le pidieron más papeles para evidenciar su reclamo y que no podía notificar la cancelación del viaje previo a la ocurrencia por ser una emergencia médica. Cabe señalar que desde el 10 de mayo de 202[3] se solicitaron los documentos necesario[s] para evaluar la reclamación, que estos fueron producidos parcialmente, y que la ajustadora le dio seguimiento en múltiples ocasiones para completar el expediente.

13. Al recibo de este requerimiento, MAPFRE remitió el caso a la unidad de reclamaciones para que revisara el expediente de esta reclamación. La ajustadora evaluó la evidencia provista por el Solicitante con el requerimiento y el expediente de la reclamación para completar su análisis.

14. Luego de evaluar la evidencia provista por el Solicitante, la ajustadora concluyó que la cancelación del viaje del Solicitante no estaba cubierta por el Seguro. El ajuste concluyó que

la emergencia médica ocurrió antes de la fecha de salida del viaje y vigencia del seguro. Ya para el 12 de abril de 2023 el Solicitante estaba hospitalizado y tenía conocimiento de que no podrían viajar. En este caso, la notificación del reclamo ocurrió posterior al periodo de notificación (de setenta y cinco días previo a la fecha del viaje) provisto por la póliza.

15. MAPFRE ajustó la reclamación sujeta a los términos, condiciones y límites de seguro de viaje número 1221238006352.

16. El contrato es claro en cuanto a los términos, condiciones y exclusiones establecidos por el mismo. El ajustador basó su determinación conforme a las disposiciones de la póliza. La notificación del reclamo ocurrió fuera del término provisto por el seguro, por lo que no cumple con el requisito de notificación, y quedó excluido de cubierta.

17. El seguro obtenido por el solicitante es de fácil lectura, no tiene cláusulas obscuras y el mismo fue archivado en, examinado y aprobado para su venta por la Oficina del Comisionado de Seguros. Sus términos y condiciones son vinculantes entre las partes. (Énfasis en el original)

12. El Asegurador, con anterioridad a la emisión de la *Orden*, reconsideró motu proprio la denegatoria de la Reclamación y realizó el pago al Solicitante y a la Asegurada por cancelación de viaje, según la Póliza, con fecha de 24 de octubre de 2023; cheque núm. 2315830, por $3,042.36. la OCS advino en conocimiento de ello con posterioridad a la emisión y notificación de la Orden.

Conforme a las determinaciones de hechos, el Comisionado de Seguros declaró No Ha Lugar la solicitud de desestimación presentada por la parte recurrente, y dispuso lo siguiente:

1. **CONFIRMAR** la violación al Artículo 27.161(3), (4) y (6) del Código de Seguros de Puerto Rico, supra.

2. **DEJAR SIN EFECTO** la violación al Artículo 27.161(17) del Código de Seguros de Puerto Rico, supra.

3. **DEJAR SIN EFECTO** la orden de resolver con pago la Reclamación, ante el hecho de que el Asegurador emitió al Solicitante y a la Asegurada el pago correspondiente según la Póliza.

4. Tomando en consideración que el Asegurador emitió el pago de la Reclamación correspondiente según la Póliza previo a la Orden; y que no se

constituyó la violación al inciso (17) del Artículo 27.161 del Código de Seguros de Puerto Rico, supra, **IMPONER** una multa administrativa de $10,000.00, en lugar de los $15,000.00 impuestos en la Orden.

En desacuerdo con lo resuelto, la parte recurrente, presentó la *Moción de Reconsideración.* Argumentó que, no surgía del expediente administrativo y de los hechos esbozados en la *Resolución,* que MAPFRE hubiese dejado de "adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza. Añadió que, rehusó pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible y no haber intentado de buena fe llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad". Asimismo, aseguró que, recibió la reclamación, la investigó, la denegó, pero luego la reconsideró *motu proprio* y emitió el pago correspondiente previo a la notificación de la *Orden,* y una vez notificada la *Orden,* informó a la Oficina del Comisionado de Seguros el haber realizado el pago al asegurado. Sostuvo que, la OCS había fallado en probar la ausencia de buena fe de la parte recurrente en el ejercicio de la evaluación del reclamo al beneficio de la Póliza del Solicitante. Acotó que, no era posible adjudicar sumariamente el elemento de mala fe e intención en el que descansaba el foro recurrido para adjudicar la multa.

Transcurrido el término dispuesto para que el foro recurrido actuara sobre la *Reconsideración,* la parte recurrente acudió ante este Tribunal mediante *Petición de Revisión Judicial,* y esgrimió los siguientes señalamientos de error:

- Erró la OCS al no aceptar que el pago a los Asegurados realizado el 24 de octubre de 2023, previo a la emisión de la Orden y en una reconsideración de la decisión inicial de denegar el mismo por el Asegurador, tuvo el efecto de

convertir la reclamación de los asegurados en un asunto académico.

- Erró la OCS al no resolver que los hechos o conductas que alega sostienen las violaciones al Art. 27.161 del Código de Seguros, imputadas al Asegurador, nunca fueron notificadas de manera específica, ni probadas conforme al debido proceso de ley.

- Erró la OCS al no resolver que hay ausencia de facultad del Comisionado de Seguros para intervenir en una controversia contractual, entre el asegurado y asegurador, por lo que no procede que ordene el pago de una reclamación en sustitución del criterio del asegurador al interpretar una póliza y adjudicar una reclamación.

El 15 de octubre de 2024, la parte recurrida presentó el *Escrito en Cumplimiento de Orden.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

Como es sabido, las determinaciones administrativas suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). Nuestro Máximo Foro ha enfatizado que, no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente

administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.[1]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022); *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, págs. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente

---

[1] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra, pág. 90. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la

deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

## B. El Contrato de Seguro

En Puerto Rico, la industria de seguros está investida de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos.[2] *Rivera Candela v. Universal Ins. Co.*, 2024 TSPR 99 (2024); *Barreto Nieves v. E. Coast Water Sports. LLC*, 2024 TSPR 40 (2024); *Con. Tit. Acquamarina et al. v. Triple-S*, 210 DPR 344 (2022); *Consejo Titulares v. MAPFRE*, 208 DPR 716 (2022). Los seguros cumplen la función social de atenuar los riesgos inherentes de las relaciones comerciales, al amortiguar los giros violentos de incertidumbre propios del mercado, aminorar sus efectos y propiciar el crecimiento estable de la economía. *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010 (2020); *Con. Tit. Acquamarina et al. v. Triple-S*, supra, págs. 355-356; *Consejo Titulares v. MAPFRE*, supra, pág. 773. Es por ello que ha sido altamente reglamentada extensamente por el Estado mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como *Código de Seguros de Puerto Rico*, 26 LPRA sec. 101 *et seq.* (en adelante, Código de Seguros).[3]

A este contrato de gran complejidad e importancia se le define como aquel por el que una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable si se produce un suceso incierto previsto en el mismo.[4] Por lo tanto, su propósito es indemnizar y proteger al asegurado transfiriendo el

---

[2] Véase *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 897 (2012); *Jiménez López et al. v. SIMED*, 180 DPR 1, 8 (2010); *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009). Véase, además, R. Cruz, *Derecho de Seguros*, San Juan, Ed. JTS, 1999, pág. 6.

[3] *Rivera Candela v. Universal Ins. Co.*, supra; *SLG Francis-Acevedo v. SIMED*, supra, pág. 8; *Natal Cruz v. Santiago Negrón et al.,* 188 DPR 564, 575-576 (2013).

[4] 26 LPRA sec. 102.

riesgo a la aseguradora si ocurre el evento especificado en el contrato.[5] *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 149 (2021). Los términos del contrato de seguro están contenidos en la póliza. *Maderas Tratadas v. Sun Alliance et al.*, supra, pág. 897. Se denomina póliza el documento donde se consignan los términos que rigen el contrato de seguro.[6]

En lo atinente a la controversia ante nos, el Art. 27.161 del Capítulo 27 del Código de Seguros dispone sobre las prácticas desleales en el ajuste de reclamaciones[7]. En específico, los incisos (3), (4), (6) y (17) del precitado artículo, establece lo siguiente:

> En el ajuste de reclamaciones ninguna persona incurrirá o llevará a cabo, cualquiera de las siguientes prácticas desleales:
>
> [...]
>
> (3) Dejar de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza.
>
> (4) Rehusar pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible.
>
> [...]
>
> (6) No intentar de buena fe de llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad.
>
> [...]
>
> (17) Negar el pago de una reclamación bajo el pretexto de información insuficiente cuando ésta era capaz de ser obtenida bajo métodos ordinarios de investigación.

Por otro lado, respecto a la penalidad por incumplimiento con las disposiciones del Código de Seguro, su Art. 2.250 establece que, cualquier violación a las disposiciones del mismo y de las reglas o reglamentos promulgados, estarán sujetas a una multa administrativa no menor de quinientos dólares ($500.00), ni mayor

---

[5] Véase *Integrand Assurance v. CODECO et al.*, 185 DPR 146, 161 (2012).
[6] 26 LPRA sec. 1114(1).
[7] *Consejo Titulares v. MAPFRE*, supra, págs. 774-775.

de diez mil dólares ($10,000.00) por cada violación[8]. Lo anterior es reiterado en el Art. 27.260, que explica que, cualquier persona que violase una disposición del Capítulo 27 del precitado Código, se le podrá imponer una multa administrativa que no excederá de diez mil dólares ($10,000.00) por cada violación[9].

## C. *Facultades del Comisionado de Seguros*

Nuestro Tribunal Supremo, en múltiples ocasiones ha reiterado que, la Oficina del Comisionado de Seguros es la entidad encargada de reglamentar todos los asuntos relacionados a la industria de seguros en Puerto Rico. *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 148-149 (2023); *ECP Incorporated v. OCS*, 205 DPR 268, 275 (2020). Ello, conforme a las facultades delegadas por la Asamblea Legislativa a la OCS, por medio del Código de Seguros, *supra*. *Íd.*; *MCS Advantage, Inc. v. Fossas Blanco*, supra, pág. 149.

Bajo este supuesto, el Comisionado de Seguros de Puerto Rico, tiene el deber de fiscalizar y reglamentar el cumplimiento de las disposiciones creadas por la ley. Así, ostenta la facultad de "llevar a cabo las investigaciones y exámenes que considere necesarias para asegurar el cumplimiento de las disposiciones del Código, su reglamento y las órdenes que ha emitido, y para obtener toda la información útil a la administración de éstas. Para ello utilizará aquellos mecanismos necesarios". Art. 2.030 del Código de Seguros, 26 LPRA sec. 235; *ECP Incorporated v. OCS*, supra, pág. 276; *MCS Advantage, Inc. v. Fossas Blanco*, supra, pág. 149.

En específico, el Art. 2.030 del Código de Seguros, *supra*, dispone que, el Comisionado de Seguro cuenta con las facultades que siguen:

> (1) El Comisionado tendrá la autoridad que expresamente se le confiera por las disposiciones de este Código o que resulten razonablemente implícitas de dichas disposiciones.

---

[8] 26 LPRA sec. 257.
[9] 26 LPRA sec. 2735.

(2) El Comisionado desempeñará sus deberes y hará cumplir las disposiciones de este Código. Del mismo modo deberá velar para que la administración de la política pública responda a los más elevados criterios de excelencia y eficiencia, que proteja adecuadamente el interés público y responda a las necesidades de los tiempos y a los cambios que ocurran o se anticipen en la industria de seguros y en su reglamentación.

(3) El Comisionado podrá interponer cualesquiera remedios, acciones o procedimientos legales que fueran necesarios o convenientes para hacer efectivos los propósitos de este Código o cualquier ley o reglamento, cuyo cumplimiento o fiscalización le haya sido asignada, ya sea representado por el Secretario de Justicia o, previa autorización de éste, por sus propios abogados. Además, el Comisionado podrá designar a un funcionario de la Oficina para que le brinde apoyo y asesoramiento al fiscal del Departamento de Justicia que tenga la encomienda de instar un procedimiento criminal por violación a las leyes, reglamentos u órdenes bajo la administración de la Oficina.

[…]

(10) El Comisionado dictará y notificará las órdenes que estime necesarias y adecuadas para hacer cumplir las disposiciones de este Código y de cualquier otra ley o reglamento administrado por éste. La orden expresará sus fundamentos y las disposiciones legales de acuerdo con las cuales se dicta la orden o se intenta tomar acción. La orden indicará, además, la fecha en la cual la misma surtirá efecto.

[…]

(17) El Comisionado tendrá la facultad de imponer sanciones y penalidades administrativas por violaciones a este Código y a los reglamentos aprobados en virtud de éste y dictar cualquier remedio pertinente autorizado en el Código.[10]

Asimismo, el Reglamento Núm. 5266 de la OCS, en el Art. 4 de la Regla I-A, respecto al alcance de las investigaciones realizadas por el ente, dispone que:

El Comisionado podrá llevar a cabo las investigaciones e inspecciones convenientes para asegurar el cumplimiento de las distintas disposiciones del Código de Seguros de Puerto Rico y su Reglamento, de las Órdenes y Resoluciones que ha emitido aquél y sobre cualquier otro asunto que guarde relación con la materia de seguros. Llevará a cabo, además, las investigaciones necesarias para obtener toda la información útil a la administración de las disposiciones legales y reglamentarias que le

---

[10] 26 LPRA sec. 235.

corresponde poner en vigor, y toda aquella información pertinente al asunto objeto de la investigación. Dicha investigación podrá extenderse a entidades que tengan o hayan tenido relación con seguros.[11]

El Máximo Foro ha expresado que, si bien es cierto que la autoridad concedida a la OCS es amplia, esta se limita a la reglamentación de la industria de seguros y a la administración y cumplimiento del Código de Seguros y de los reglamentos promulgados por su entidad administrativa. *ECP Incorporated v. OCS*, supra, pág. 276.

### D. Justiciabilidad

Como es sabido, los tribunales revisores solo podremos resolver los casos que sean justiciables. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727 (2022); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007); *Hernández, Santa v. Srio. de Hacienda*, supra, pág. 738; *Bhatia Gautier v. Gobernador*, supra, pág. 68.   Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no

---

[11] Véase, además, *ECP Incorporated v. OCS*, supra, pág. 276.

está maduro. *Super Asphalt v. AFI y otros*, supra, pág. 820; *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.

Una de las manifestaciones concretas del principio de justiciabilidad es la doctrina de academicidad. *Smyth, Puig v. Oriental Bank*, supra, pág. 78. Sobre el particular, nuestro más Alto Foro ha reconocido que los foros pierden su jurisdicción sobre una controversia cuando, durante su trámite, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución. Esto es, el foro puede entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo. *Super Asphalt v. AFI y otros*, supra, pág. 816. Asimismo, deberán ser evaluados los eventos anteriores, próximos y futuros, a los fines de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. *Íd.*

### E. Debido Proceso de Ley

La Constitución del Estado Libre Asociado reconoce como derecho fundamental del ser humano el derecho a la vida, la libertad y el disfrute de la propiedad. Const. De PR, Art. II, Sec. 7, LPRA, Tomo I. También dispone que, previo a interferir con los intereses propietarios o libertarios de un ciudadano, el Estado debe cumplir con las exigencias del debido proceso de ley. *Garriga Villanueva v. Municipio de San Juan*, 176 DPR 182, 196 (2009). Similar reconocimiento, sobre la existencia del debido proceso de ley, se encuentra en la Enmienda V y XIV de la Constitución de Estados Unidos. *Hernández v. Secretario*, 164 DPR 390, 394 (2005).

El concepto del debido proceso de ley tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la procesal, que se enfoca en garantizar un proceso justo y equitativo ante acciones estatales que interfieran con intereses

privados. *PVH Motors v. ASG,* 209 DPR 122, 130 (2022); *Garriga Villanueva v. Municipio de San Juan,* supra, a la pág. 196; *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 394 (2018); *Domínguez Castro v. ELA,* 178 DPR 1, 35 (2010).

Dado a que las agencias administrativas, bajo sus funciones administrativas interfieren con los intereses de libertad y propiedad de las personas, las garantías del debido proceso de ley son aplicables a sus procesos. *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ___ (2023); *PVH Motors v. ASG,* supra, pág. 130-131. Sin embargo, en el derecho administrativo el debido proceso de ley no tiene la misma rigidez que en la esfera penal. *Íd.* Ello, se debe a la necesidad que tienen las agencias de regular las áreas que le han sido delegadas por la Asamblea Legislativa debido a su peritaje en el campo. Aun así, el procedimiento adjudicativo debe de ser uno justo y equitativo. *Báez Díaz v. ELA,* 179 DPR 605, 623 (2010). Es por lo que, el procedimiento adjudicativo frente a las agencias, deberá ceñirse a las garantías mínimas del debido proceso de ley. *PVH Motors v. ASG,* supra, pág. 131; *Alamo Romero v. Adm. de Corrección,* 175 DPR 314 (2009).

En armonía con lo anterior, en los procesos adjudicativos se exige como mínimo: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) contar con asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motors v. ASG,* supra, pág. 131; *St. James Sec. v. AEE,* supra.

Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor

probable de garantías adicionales o distintas; y el interés gubernamental protegido en la acción sumaria, inclusive los cargos fiscales y administrativos que conllevaría el imponer otras garantías procesales. *Báez Díaz v. ELA, supra*, a la pág. 623.

## F. Resolución Sumaria y los Procedimientos Administrativos

Según es conocido, la Ley Núm. 38 de 30 de junio de 2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), permite a las agencias administrativas resolver de manera sumaria los procedimientos ante sí. *OCS v. Universal*, 187 DPR 164, 177 (2012). Es por lo que, la sección 3.7 del precitado estatuto, dispone lo siguiente:

> (a)  Si la agencia determina que es necesario celebrar una vista adjudicativa, podrá citar a todas las partes o sus representantes autorizados e interventores, ya sea por su propia iniciativa o a petición de una de las partes, a una conferencia con antelación a la vista, con el propósito de lograr un acuerdo definitivo o simplificar las cuestiones o la prueba a considerarse en la vista. Se podrán aceptar estipulaciones, siempre que la agencia determine que ello sirve a los mejores intereses públicos.
>
> (b)  **Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.**
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede[12]. (*Énfasis suplido*)

---

[12] 3 LPRA sec. 9647.

El Tribunal Supremo de Puerto Rico ha dejado claro que no hay impedimento alguno en que una agencia administrativa pueda adjudicar sin celebrar una vista evidenciaria, siempre y cuando no exista controversia sobre los hechos, y cuando la totalidad de la prueba documental que surge del expediente señale claramente la corrección de la determinación de la agencia. *OCS v. Universal*, supra, pág. 178, citando a *Mun. de San Juan v. CRIM*, 178 DPR 163, 179 (2010).  Esto evita la necesidad de celebrar una "audiencia evidenciaria [que] no aportaría ningún elemento meritorio al proceso analítico". *OCS v. Universal*, supra, pág. 178, citando a J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, San Juan, Ed. Situm, 2012, pág. 231.

De igual forma, el Art. 2.190 dispone que, "[n]o será necesaria la celebración de una vista administrativa de adjudicación cuando el Comisionado determine, a solicitud de alguna de las partes, dictar una resolución sumaria conforme se establece en el Artículo 2.220".[13]  Por otro lado, el Art. 2.220 (2), establece que:

> El Comisionado podrá emitir una resolución sumaria que disponga parcial o totalmente de las controversias, siempre y cuando determine, a la luz de los documentos ante su consideración, que no existe controversia real sobre los hechos materiales y que únicamente restan por adjudicarse controversias de derecho. En caso de que la resolución dictada sumariamente disponga de la totalidad de las controversias ante la consideración del Comisionado, no será necesaria la celebración de una vista. Cualquier parte afectada por la resolución así dictada será debidamente notificada de ésta y podrá ejercer su derecho a la revisión judicial conforme lo dispone la "Ley de Procedimiento Administrativo Uniforme".[14]

### III

En su primer señalamiento de error, la parte recurrente alega que la OCS incidió al no aceptar que el pago de la reclamación, emitido el 24 de octubre de 2023, previo a que se emitiera la *Orden*

---

[13] 26 LPRA sec. 251.
[14] 26 LPRA sec. 254.

y en reconsideración de la decisión inicial de denegar el mismo, tuvo el efecto de convertir la reclamación de un asunto académico.

Según reseñáramos, el Solicitante presentó una solicitud de investigación ante la OCS, para que investigara si MAPFRE había actuado correctamente al denegar el pago de la reclamación. El 3 de noviembre de 2023, la OCS emitió la *Orden*, donde concluyó que, el argumento de la parte recurrente en cuanto a la denegatoria de la reclamación, demostraba que MAPFRE no la había resuelto de buena fe, puesto que no había realizado una evaluación basada en la situación que se encontraba el Solicitante, hospitalizado y en cuidado intensivo, lo que le impidió notificar la cancelación de su viaje. Es por lo que, determinó que, debido a que MAPFRE dejó de adoptar e implementar métodos razonables para la investigación y no intentó llevar a cabo un ajuste equitativo, había violentado el Art. 27.161(3), (4), (6) y (17). A tales efectos, le impuso una multa administrativa de $15,000.00, por violación al mencionado artículo.

Posteriormente, la parte recurrente presentó la *Solicitud de Resolución Sumaria*, en la cual, entre otras cosas, notificó a la OCS que previo a la notificación de la *Orden*, había reconsiderado la denegatoria de la reclamación y realizado el pago correspondiente, de acuerdo a los términos de la Póliza. Conforme a ello, solicitó la desestimación sumaria de la *Orden* por el fundamento de academicidad. Finalmente, el foro recurrido emitió la *Resolución*, mediante la cual reconoció que, la parte recurrente *motu proprio* había reconsiderado su decisión y había realizado el pago de la reclamación. No obstante, confirmó la determinación de que, la parte recurrente había violado el Art. 27.161 (3), (4) y (6) del Código de Seguros, y al tomar en cuenta la emisión del pago de la reclamación, eliminó la violación al inciso (17) del referido artículo y modificó la multa administrativa de $15,000.00 a $10,000.00.

Si bien es cierto que la parte recurrente reconsideró *motu proprio* su decisión, y emitió el pago de la reclamación, la denegatoria *previo* al pago de la reclamación, constituyó una violación a los incisos del Art. 27.161 (3), (4) y (6) del Código de Seguros. Puesto que, la parte recurrente falló en ser diligente al momento de evaluar la reclamación y no considerar la situación particular del señor Fasick Juliá, y no fue hasta tiempo después de que se comenzara la investigación y de la solicitud de esta, que MAPFRE tomó acción. La parte recurrida no demostró haber actuado de buena fe al llevar a cabo un ajuste de forma rápida y justa. Según expone la parte recurrida, lo anterior no significa que la parte recurrente no haya cometido la infracción a los precitados artículos, puesto que cometió dicha infracción previo a la investigación y no fundamentó su decisión. Por tanto, la controversia no se tornó académica.

Como segundo señalamiento de error, la parte recurrente aduce que la OCS erró al no resolver que los hechos o conductas alegadas, sostienen las violaciones al Art. 27.161 del Código de Seguros imputadas, no fueron notificadas de manera específica, ni probadas conforme al debido proceso de ley.

Mediante *Orden* emitida el 3 de noviembre de 2023, la OSC relató los hechos que dieron paso a la investigación. De igual manera, señaló los actos constitutivos de las violaciones al Código de Seguros llevados a cabo por la parte recurrente. Es decir, la *Orden* le informó a la parte recurrente de forma específica los hechos y las violaciones al Código de Seguros. Dicha *Orden* fue notificada a la parte recurrente e incluyó el término para recurrir de dicha *Orden*, cumpliendo así, con el debido proceso de ley. Lo anterior, le brindó la oportunidad a la parte recurrente de impugnar la *Orden*, según lo hizo, y exponer su postura, defensa y presentar prueba. A

base de la prueba presentada por las partes, la OCS tomó la determinación recurrida.

Recordemos que, nos corresponde revisar las decisiones administrativas bajo el criterio de razonabilidad.[15] Conforme a este, nos limitamos a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituyó un abuso de discreción[16]. Nuestra intervención se circunscribe al determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia se encuentran sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[17]

Luego de revisar minuciosamente el expediente administrativo, somos del criterio que, la decisión de la agencia estuvo bien fundamentada a base de la prueba, y luego de garantizarle el debido proceso de ley a MAPFRE. La parte recurrente no nos puso en posición de revertir dicha decisión.

Ante la ausencia de una actuación arbitraria, ilegal, irrazonable o que constituya un abuso de discreción por parte de la agencia administrativa, razonamos que resulta innecesario que intervengamos con su determinación.

En su último señalamiento de error, la parte recurrente sostiene que, la OCS incidió al no resolver que el Comisionado de Seguros no tenía facultad para intervenir en una controversia contractual entre el asegurado y el asegurador, por lo que, no procedía que se ordenara el pago de una reclamación en sustitución

---

[15] *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626.

[16] *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, supra, pág. 216.

[17] *Rolón Martínez v. Supte. Policía*, supra, págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

del criterio del asegurador al interpretar una póliza y adjudicar una reclamación.

Adelantamos que, no le asiste la razón. Veamos.

Según explicado en el derecho reseñado, el Comisionado de Seguros, cuenta con el deber de fiscalizar y reglamentar el cumplimiento de las disposiciones creadas por la ley. Por ello, cuenta con la facultad de realizar investigaciones y exámenes que entienda necesarias para asegurar el cumplimiento con las disposiciones del Código de Seguro[18]. En específico, el Art. 2.030 del Código de Seguros, *supra*, desglosa las facultades del Comisionado de Seguros, y entre estas se encuentra el desempeño de sus deberes y el **hacer cumplir las disposiciones del Código de Seguros**. Así como el dictar y notificar órdenes necesarias y adecuadas con el propósito de hacer cumplir las disposiciones del Código de Seguros, y de imponer sanciones y penalidades administrativas por violaciones a este.[19]

En el caso de epígrafe, como mencionáramos, el señor Fasick Juliá como asegurado, presentó ante la OCS una solicitud de investigación para que se investigara si MAPFRE había actuado correctamente al denegar el pago de la Reclamación. A estos efectos, bajo las facultades y poderes delegados al Comisionado de Seguros, se inició una investigación con el propósito de determinar si la parte recurrente había violado las disposiciones del Código de Seguros. El Comisionado de Seguros, mediante *Orden* resolvió que, la parte recurrente había violado el Art. 27.161(3)(4)(6) y (17), y le ordenó resolver la Reclamación y presentar prueba de ello a la OCS, además, le impuso una multa administrativa de $15.000.00.

---

[18] Art. 2.030 del Código de Seguros, 26 LPRA sec. 235; *ECP Incorporated v. OCS*, supra, pág. 276; *MCS Advantage, Inc. v. Fossas Blanco,* supra, pág. 149.
[19] 26 LPRA sec. 235.

Posteriormente, mediante *Resolución,* la OCS reiteró que la parte recurrente había violado ciertas disposiciones del Código de Seguros, y modificó la multa a $10,000.00.

Como bien argumenta la parte recurrida, no surge de la *Resolución* que, la OCS le hubiese ordenado a la parte recurrente el pago de la reclamación, puesto que, esta última había reconsiderado *motu proprio* realizar el pago. El Comisionado de Seguros en virtud de sus facultades, investigó y determinó que la parte recurrente había violado las disposiciones del Código de Seguros, y a tales efectos, le impuso la multa.  De igual manera, el Código de Seguros le concede al Comisionado de Seguros la facultad de dictar aquellos remedios que entienda necesarios con el propósito de cumplir con sus disposiciones.

**IV**

Por los fundamentos que anteceden se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones